UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SUSAN VON DRASEK<br>2830 7th West Apt. 203<br>West Fargo, ND 58078,<br><br>    Plaintiff<br><br>v.<br><br>KATHLEEN SEBELIUS<br>in her official capacity as<br>Secretary,<br>United States Department of Health and<br>Human Services<br>200 Independence Avenue, S.W.<br>Washington, DC 20201,<br><br>    Defendant. | Civil Action No.<br><br>Jury Demanded |

## COMPLAINT FOR RELIEF FROM VIOLATIONS OF THE REHABILITATION ACT

### Nature of Claim

1. This civil action is brought pursuant to the Rehabilitation Act of 1973, 29 U.S.C. § 791 et seq., as amended, for relief from discrimination and retaliation suffered when Defendant denied Plaintiff a reasonable accommodation for her disability and removed her from federal service.

### Jurisdiction and Venue

2. This Court has jurisdiction pursuant to 29 U.S.C. § 794a(1), which incorporates the remedies, rights and procedures of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-16.

3. At all relevant times, Plaintiff was a qualified individual with a disability as defined in 29 U.S.C. § 794(a) and 42 U.S.C. § 12102.

4. From April 13, 2008, until April 22, 2011, Plaintiff was an "employee" of Defendant as defined by 42 U.S.C. § 12111(4), 29 C.F.R. § 1630.2(f), and 42 U.S.C. § 2000e(f).

5. Venue lies in this Court because Plaintiff was employed by Defendant federal agency which is located in Washington, D.C., some of the discriminatory actions and decisions took place in Washington D.C., and the records concerning Plaintiff's employment are maintained in Washington, D.C.

### Description of the Parties

6. Plaintiff Susan M. Von Drasek (hereinafter "Plaintiff") is a citizen of the United States and a resident of the state of North Dakota. Plaintiff was employed by the Food and Drug Administration (hereinafter "Defendant" or "FDA"), a component of the United States Department of Health and Human Services ("HHS"), as a GS-1320-11 Chemist from April 13, 2008, until April 22, 2011.

7. Defendant Kathleen Sebelius is the Secretary of the U.S. Department of Health and Human Services, an Agency of the Executive Branch of the U.S. Government; she is the properly named Defendant. 42 U.S.C. § 2000e-16(c). Defendant Sebelius is sued in her official capacity only, and on behalf of her predecessors, successors, agents, and employees.

### Exhaustion of Administrative Remedies

8. Effective April 22, 2011, Defendant removed Plaintiff from federal service.

9. On April 26, 2011, Plaintiff appealed the removal to the U.S. Merit Systems Protection Board (hereinafter "MSPB"). Plaintiff included in the appeal an allegation that the

removal was a violation of the Rehabilitation Act. The MSPB case number was DE-0432-11-0323-I-1.

10. On December 6, 2011, the MSPB issued an Initial Decision, which became final on January 10, 2012.

11. On or about February 9, 2012, pursuant to 5 U.S.C. § 7702 and 29 C.F.R. § 1614.303, Plaintiff submitted a Petition to the U.S. Equal Employment Opportunity Commission (hereinafter "EEOC") seeking review of the MSPB Initial Decision. The EEOC received another copy of this Petition on February 15, 2013.

12. On May 9, 2013, Plaintiff, through counsel, received the EEOC's Denial of Consideration. Plaintiff was required to file this action within 30 days. 5 U.S.C. § 7703(b)(2).

13. Plaintiff exhausted all required administrative remedies.

## Statement of Facts

14. Plaintiff has a disability as that term is defined in the Rehabilitation Act and the Americans with Disabilities Act Amendments Act of 2008.

15. Plaintiff has a Master of Science degree in Geochemistry, was the author or co-author of six professional publications, and received numerous awards and commendations for her performance.

16. Early in her career, Plaintiff worked as a Forensic Drug Analyst at the New Mexico Southern Crime Laboratory and as a Materials Chemist at the Sandia National Laboratory in Albuquerque, New Mexico.

17. From July 2000 until April 2008, Plaintiff was a GS-1320-9 Chemist with the United States Department of Agriculture ("USDA"), Animal and Plant Health Inspection Service, Center for Plant Health Science and Technology.

18. Plaintiff's performance appraisals with USDA from 2000 through 2007, reflect that Plaintiff never received a rating – overall or in any individual element – of less than Fully Successful. Notably, on her December 2006 rating, Plaintiff received a top score (5) reflecting Exceptional Results both in Special Projects and Specialized Instrumental Analysis and in Professional Development, and on her December 2007 rating, she received Exceptional Results both in Professional Development and in Compliance with Established Quality and Safety Program. In addition, in 2007, only a few months before she joined the FDA, Plaintiff received a Fully Successful in the element of "Analysis."

19. Plaintiff left USDA for FDA because her position at USDA was capped at the GS-9 level.

20. Plaintiff joined the FDA as a GS-1320-11 Chemist on April 13, 2008.

21. Plaintiff was diagnosed with bipolar disorder, mixed type, which includes depression and anxiety, in 1978.

22. According to Plaintiff's treating physician, Jayashree Coca, M.D., M.P.H., Plaintiff's mental conditions substantially limit numerous major life activities, including sleeping, thinking and concentrating, processing information, impulse control, cognitive abilities, and interacting with others.

23. On April 1, 2010, Rachel Dietzel, Supervisory Chemist, Pesticides GC Group and Plaintiff's first level supervisor, placed Plaintiff on a Performance Improvement Plan ("PIP").

24. On September 29, 2010, Plaintiff provided Dr. Coca with a Family Medical Leave Act ("FMLA") form, which Dr. Coca completed.

25. Before Plaintiff had a chance to submit the FMLA form which identified her disabilities to Defendant, on Friday, October 1, 2010, Ms. Dietzel issued a Proposal to Remove Plaintiff from federal service for poor performance.

26. On the morning of Tuesday, October 5, 2010, Plaintiff notified Ms. Dietzel that she had a disability and needed an accommodation.

27. On October 8, 2010, Plaintiff provided Defendant with the FMLA form completed by Dr. Coca.

28. On October 13, 2010, Plaintiff, through counsel, wrote to Ms. Dietzel and Anthony Gipson, Labor and Employee Relations Specialist, to address issues involving the proposed removal and to reiterate Plaintiff's request for accommodation. The letter also explained that a statement from Plaintiff's treating physician was being obtained in support of her request for accommodation.

29. On October 14, 2010, Plaintiff, through counsel, initiated discussions with Defendant's reasonable accommodation specialist, Saundra Anderson, and ascertained Defendant's practices for requesting a reasonable accommodation. As a result of those conversations, Plaintiff submitted a formal, written request for reasonable accommodation on November 4, 2010, which included a detailed letter from Dr. Coca describing Plaintiff's disability, the major life activities that were affected, the impact of Plaintiff's mental impairment on her ability to perform her job, and the requested accommodations.

30. As an accommodation, Dr. Coca requested that Plaintiff be provided written instructions for all tasks and additional time to complete tasks and be reassigned.

31. On November 10, 2010, Plaintiff provided Defendant with a signed medical release authorizing Defendant to speak directly with Dr. Coca and to obtain Plaintiff's medical documentation.

32. On November 23, 2010, Ms. Anderson notified Ms. Dietzel of the particular accommodations being requested by Plaintiff. Ms. Anderson offered her assistance to Ms. Dietzel and informed her that a decision maker for Plaintiff's request should be identified, the decision maker should notify Plaintiff that a determination on her reasonable accommodation request would be received within 15 days after Ms. Anderson's office issued a recommendation, and the decision maker had a duty to engage in an interactive dialogue with Plaintiff throughout the accommodation process. Ms. Dietzel was the decision maker. Shortly thereafter, Ms. Anderson informed Ms. Dietzel that an employee could request accommodation at any time, and if it was determined that she was disabled, the Defendant must take steps to accommodate her.

33. On December 16, 2010, Dr. Lawrence P. Saladino, Federal Occupational Health Service, Department of Health and Human Services, who was reviewing Plaintiff's medical documentation on behalf of Defendant, faxed a request for completion of a supplemental form to Dr. Coca, which she completed and returned on December 27, 2010.

34. Ms. Dietzel had already drafted the decision to remove Plaintiff before she had received Plaintiff's written reply to the proposed removal and before she had received the Defendant's formal response to Plaintiff's request for accommodation.

35. On December 23, 2010, Plaintiff submitted her written reply to the Defendant's proposed removal. In the written reply, Plaintiff identified her disability, requested a reasonable accommodation, and outlined the Rehabilitation Act and the Defendant's responsibilities

thereunder. Plaintiff also established that she had performed satisfactorily during her years as a GS-9 Chemist for the USDA.

36. On December 27, 2010, Dr. Saladino provided to Ms. Anderson his assessment of Plaintiff, which was based purely on a review of documents. Dr. Saladino concluded that Plaintiff was substantially impaired in several major life activities, including thinking, concentrating, interacting with others, working, and sleeping and, therefore, was entitled to accommodation. He agreed with Dr. Coca that Plaintiff should be provided written instructions, as much as administratively possible, and recommended providing her with additional time to complete assignments, if possible. With respect to the request for reassignment, Dr. Saladino stated that he did not have enough specific information about the medical benefit to be obtained from this request. Dr. Saladino stated that he could not recommend granting such a request at that time. Neither Dr. Saladino, nor anyone else from the Defendant, contacted Dr. Coca to request additional information regarding the request for reassignment. Likewise, no one ever sought additional information from Plaintiff. Dr. Saladino's letter was not provided to Plaintiff until after she had appealed her termination.

37. On January 14, 2011, Ms. Dietzel received Dr. Saladino's report along with an explanation that Ms. Dietzel had 15 days to respond to Plaintiff's reasonable accommodation request. Ms. Dietzel did not respond within these 15 days, and no extenuating circumstances justified her failure to meet this 15 day deadline.

38. On March 29, 2011, after Ms. Dietzel informed Ms. Anderson that Plaintiff could not be accommodated in her office, Ms. Anderson correctly instructed Ms. Dietzel that the Defendant would need to offer Plaintiff reassignment as an accommodation. Ms. Anderson said she would prepare a memo asking Plaintiff if she wished to be reassigned to a position elsewhere

7

in FDA. No such memo was ever provided to Plaintiff, and no contact was made with her to discuss reassignment.

39. When Ms. Anderson informed Ms. Dietzel that a reassignment would need to be offered based on Ms. Dietzel's conclusions that Plaintiff could not be accommodated in her position of record, Ms. Dietzel's response was: "Still, she does not get it."

40. Ms. Dietzel also was advised by Sheryl Sledge-Gonzalez, a Human Resources employee of Defendant, that a reassignment was the next step in the process, and "a way of getting [Plaintiff] away from you in Kansas." Ms. Sledge-Gonzalez further explained that if Plaintiff was eligible for reassignment and a GS-11 Chemist position was available, Plaintiff would automatically be placed in the position. "If she does not perform there, they will get rid of her." Ms. Sledge-Gonzalez explained that a questionnaire would be provided to Plaintiff to determine whether she was willing to be reassigned and/or demoted, and which addressed other issues related to reassignment. No such questionnaire was ever provided to Plaintiff, nor did anyone from the Defendant contact her to discuss these issues.

41. Ms. Sledge-Gonzalez encouraged Ms. Dietzel to ensure Plaintiff was not provided a reassignment in Ms. Dietzel's lab. Ann Adams (Ms. Dietzel's supervisor and the concurring official on the removal) commented that she hoped the new supervisor would be fully apprised of the reasons for Plaintiff's reassignment, and Ms. Sledge-Gonzalez reassured her that would likely happen and that Ms. Adams was free to "tell them the truth."

42. Ms. Dietzel informed Ms. Anderson, the reasonable accommodation specialist, that she was going to remove Plaintiff. Ms. Anderson reiterated the need to provide a memo to Plaintiff addressing the possibility of reassignment. Despite being informed that Ms. Anderson was acting in compliance with the law and moving ahead with the reassignment, Ms. Dietzel

dismissed this, concluding that Ms. Anderson was "required to go through the motions of accommodations." Ms. Dietzel stated: "What I am hearing is that I need to go full steam ahead and get the decision issued before Sandy [Anderson] does too much more work (for several reasons)." Even though Ms. Dietzel knew that the Defendant was required to provide a reasonable accommodation in the form of reassignment to Plaintiff, she chose instead to terminate Plaintiff. Ms. Dietzel stated: "I guess I can't prevent Saundra [Anderson] from reassigning Sue, unless of course I remove her first. But do I HAVE to allow the her [sic] the EEO to attempt to reassign her?" (Capitalization in original). Ms. Dietzel did this despite being reassured that Plaintiff would be reassigned to a supervisor other than her.

43. Another exchange between the HR Specialist, Mr. Gipson, and Ms. Dietzel reflects their animosity toward Plaintiff and their intent to remove her because of her disability:

> Mr. Gipson stated: "I don't think the Agency will be able to accommodate her. Even if given more time to complete assignments, she still needs to be able to think."
>
> Ms. Dietzel replied: "Amen! This is what I have been trying to convey; the area in which I think she is truly lacking, at least as it pertains to her current position."

44. On April 18, 2011, Ms. Dietzel denied Plaintiff's request for reasonable accommodation solely on the basis that Plaintiff was not qualified to perform her job. The Defendant did not offer Plaintiff any alternate accommodations.

45. At or around the time that Defendant denied Plaintiff's request for reasonable accommodation, there were numerous vacant positions available for which Plaintiff was qualified with or without accommodation. The FDA was advertising "many vacancies" for a GS-1320-7/9/11 chemist in Bothell, WA and seven vacancies for a GS-1320-9/11/12 chemist in Jefferson, Arkansas.

46. On or around August 4, 2011, the FDA had three vacancies for a GS-1320-7/9 Chemist and three vacancies for a GS-1320-11/12 Chemist in Winchester, Massachusetts.

47. Plaintiff's skill, experience, and education makes her qualified for all of these positions, with or without accommodation, as reflected by the successful performance achieved throughout her seven years as a GS-9 Chemist with USDA and the fact that she was selected as the best qualified candidate for a GS-11 Chemist position at FDA. In addition, Plaintiff's Curriculum Vitae ("CV"), which was in the Defendant's possession, indicated prior skills performed and positions held, as well as her achievement of a 3.3 GPA while pursuing her Masters degree in Geochemistry.

48. Defendant never conducted a search for all vacant or expected (within the next 60 days) HHS positions for which Plaintiff was qualified.

49. Allowing Plaintiff a reassignment would not cost the Defendant any more than hiring a new employee.

50. Defendant failed to engage in an interactive process with the Plaintiff to find a reasonable accommodation. No one from Defendant contacted Plaintiff or her counsel to discuss any aspect of Plaintiff's request for reasonable accommodation. No one contacted Plaintiff to discuss reassignment, her interests, her skills, or her geographic flexibility.

51. Defendant never provided Plaintiff with a reasonable accommodation.

52. On April 20, 2011, Ms. Dietzel issued the Defendant's Removal Decision removing Plaintiff from federal service.

## Statement of Claims

### Count I

### (Disability Discrimination - Failure to Accommodate)

53. Plaintiff realleges and reincorporates paragraphs 1 to 52 of this Complaint as though fully set forth herein.

54. Defendant failed to reasonably accommodate the Plaintiff's known physical or mental limitations and thereby violated 29 C.F.R. § 1630.9(a) and 42 U.S.C. § 12112(b)(5)(A).

55. Defendant's conduct in failing to initiate an interactive process, refusing to provide reasonable accommodations, and in terminating Plaintiff constitutes unlawful discrimination on the basis of disability in violation of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 791 et seq.

56. Providing the Plaintiff with reasonable accommodations would not have caused undue hardship to the Defendant.

57. As a result of Defendant's conduct, Plaintiff suffered substantial damages, including, but not limited to, loss of income and benefits, pain and suffering, emotional distress, and humiliation.

### Count II

### (Disability Discrimination)

58. Plaintiff realleges and reincorporates paragraphs 1 to 52 of this Complaint as though fully set forth herein.

59. Defendant violated the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 791 et seq., when it terminated her from federal service because of her disability.

60. As a result of Defendant's conduct, Plaintiff suffered substantial damages, including, but not limited to, loss of income and benefits, pain and suffering, emotional distress, and humiliation.

## Count III

### (Retaliation)

61. Plaintiff realleges and reincorporates paragraphs 1 to 52 of this Complaint as though fully set forth herein.

62. Defendant's conduct in refusing any reasonable accommodation and terminating Plaintiff's employment constitutes retaliation for engaging in protected activity.

63. As a result of Defendant's conduct, Plaintiff suffered substantial damages, including, but not limited to, loss of income and benefits, pain and suffering, emotional distress, and humiliation.

## JURY DEMAND

Plaintiff demands a jury trial of all claims.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays that this honorable Court enter a judgment which:

a. Declares that Defendant discriminated and retaliated against Plaintiff in violation of the Rehabilitation Act of 1973;

b. Enjoins the Defendant from future acts of discrimination and violations of the Rehabilitation Act of 1973;

c. Directs the Defendant to take such measures as are reasonable and necessary to ensure that unlawful employment practices like those described herein are eliminated and do not recur,

provides equitable relief for past violations including but not limited to back pay, and otherwise abates the past violations;

d. Awards Plaintiff compensatory damages for the injuries she has suffered, including emotional and physical harm and damage to her character and reputation, in an amount appropriate to the proof at trial;

e. Awards Plaintiff reasonable attorneys' fees and costs;

f. Reinstates Plaintiff to a position commensurate with her skills and experience with back pay, benefits, and interest retroactive to the date of termination; and

g. Awards Plaintiff all other legal and equitable relief to which she may be entitled.

    Respectfully submitted,

/s/ Elaine L. Fitch
Elaine L. Fitch
DC Bar No. 471240
Kalijarvi, Chuzi, Newman & Fitch, P.C.
1901 L Street, N.W., Suite 610
Washington, D.C. 20036
Tel: (202) 331-9260
Fax: (866) 452-5789
efitch@kcnlaw.com
Attorney for Plaintiff