# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **SUSAN VON DRASEK** | ) | |
| | ) | |
| **Plaintiff** | ) | **Civil Action No. 13-847 (KBJ)** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **KATHLEEN SEBELIUS** | ) | |
| **Secretary,** | ) | |
| **U.S. Department of Health and** | ) | |
| **Human Services** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

### PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT AND POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

Plaintiff Susan Von Drasek is disabled under the Rehabilitation Act and the Americans with Disabilities Act (hereinafter ADA). Ms. Von Drasek requested a reasonable accommodation while she was still employed by the Defendant and, therefore, the Defendant still had the ability to grant her request. With accommodation, Ms. Von Drasek could have performed the essential functions of a vacant position for which she was qualified. Despite this, the Defendant refused to accommodate her because she submitted her request for accommodation a few days after the Defendant proposed to remove her for poor performance. Instead, it terminated her. As her employer, the Defendant had an affirmative obligation to accommodate Ms. Von Drasek upon learning of her disability unless it could prove doing so was an undue hardship. Defendant cannot meet its burden. Accordingly, the Defendant's actions are a violation of the Rehabilitation Act.

Defendant has moved to dismiss and for summary judgment under Rules 12(b)(6) and 56, respectively, of the Federal Rules of Civil Procedure, arguing that it had no duty to accommodate Plaintiff, Plaintiff could not perform the essential duties of her position even with accommodation, and it terminated Plaintiff because of her performance.  None of these arguments has merit.  In addition, although Defendant titled its Motion as a 12(b)(6) Motion to Dismiss, nowhere in the body of its brief did it argue that the Complaint failed to state a claim for relief.

Contrary to Defendant's Motion, summary judgment should be granted for Plaintiff. There are no genuine disputes of fact and the evidence will show that Plaintiff is entitled to judgment as a matter of law on her claims of failure to accommodate, discrimination on the basis of disability, and retaliation for requesting a reasonable accommodation.  Plaintiff requests oral argument.

## I.    SUMMARY OF THE CASE

It is undisputed that Ms. Von Drasek is disabled under the Rehabilitation Act.  Thus, the initial issue is whether a federal employer is excused from the mandates of the Rehabilitation Act when a disabled employee notifies the employer of her disability and need for accommodation *after* the agency proposes to remove her for performance problems related to her disability but *before* a decision to remove has been issued.  The law in this Circuit is clear that it is not.  In addition, the plain language of the Rehabilitation Act sets no such deadlines and instead definitively requires a federal agency to accommodate a disabled employee unless doing so is an undue hardship.

Defendant's suggestion that its Proposal to remove Plaintiff excuses its obligation to comply with the Rehabilitation Act is antithetical to the policy of empowering individuals with

2

disabilities to maximize employment, economic self-sufficiency, independence, and inclusion encapsulated in the Rehabilitation Act and reaffirmed during the enactment of the Americans with Disabilities Act Amendments Act of 2008 ("ADAAA").

Furthermore, OPM unequivocally addressed this issue when it promulgated the regulations governing disciplinary proposals, and it expressly *rejected* the idea that a request for reasonable accommodation must be submitted prior to the issuance of a proposal.  To the contrary, the regulations *require* an agency to consider medical documentation and requests for reasonable accommodation even if they are submitted by an employee in response to a disciplinary proposal and, importantly, to be mindful of the agency's obligations under the Rehabilitation Act.  These obligations comport with Supreme Court precedent holding that due process requires an agency to provide employees with a legitimate opportunity to be heard prior to removing them from federal service.  Accordingly, a thorough review of the law and policy governing requests for reasonable accommodation leads to only one conclusion: an employer is required to provide accommodation in response to a request, even if it is submitted after a Proposal, unless doing so would impose an undue hardship.  The Defendant never presented any evidence that accommodating Ms. Von Drasek would be an undue hardship and its outright refusal to provide her with any accommodation, refusal to engage in the interactive process, and extraordinary delay in denying the accommodation were violations of the Rehabilitation Act.

Finally, Ms. Von Drasek has presented direct evidence that the Defendant's termination of her was a result of her disability and need for accommodation.  Accordingly, because the Defendant refused to accommodate Ms. Von Drasek and terminated her because of her disability and her request for accommodation, the Court should grant summary judgment in favor of the Plaintiff.

## II.      FACTUAL BACKGROUND

Ms. Von Drasek has extensive experience as a Chemist.  <u>See</u> Ex. 1 (Pl.'s resume).  She

has a Master of Science in Geochemistry, wrote or co-wrote six professional publications, and

received numerous awards and commendations for her performance.  <u>Id.</u> at 7-10.  Early in her

career, Ms. Von Drasek worked as a Forensic Drug Analyst at the New Mexico Southern Crime

Laboratory and as a Materials Chemist at the Sandia National Laboratory in Albuquerque, New

Mexico.  <u>Id.</u> at 5-6.

From July 2000 until April 2008, Ms. Von Drasek was a GS-1320-9 Chemist with the

United States Department of Agriculture (hereinafter USDA), Animal and Plant Health

Inspection Service, Center for Plant Health Science and Technology.  Ex. 1 at 4-5 (Pl.'s resume).

Ms. Von Drasek received Fully Successful performance ratings throughout her tenure at USDA.

Ex. 2 at 6-45 (Pl.'s Written Reply to Proposal to Remove).  Ms. Von Drasek left USDA for FDA

because her position at USDA was capped at the GS-9 level.  <u>Id.</u> at 26; Ex. 3 ¶ 2 (Von Drasek

Aff.).  Ms. Von Drasek joined the FDA as a GS-1320-11 Chemist on April 13, 2008.  Doc. 7 at 3

¶ 1 (Def.'s Undisputed Facts).

In 1978, Ms. Von Drasek was diagnosed with bipolar disorder, mixed type, which

includes depression and anxiety.  Ex. 4 at 4 (Pl.'s Req. Reas. Acc.).  According to Ms. Von

Drasek's treating physician, Jayashree Coca, M.D., M.P.H., Ms. Von Drasek's mental conditions

substantially limit numerous major life activities, including sleeping, thinking and concentrating,

processing information, impulse control, cognitive abilities, and interacting with others.  <u>Id.</u>

Ms. Von Drasek began having difficulty performing the essential functions of her

position.  Ex. 4 at 4 (Pl.'s Req. Reas. Acc.).  Because of these difficulties, she sought medical

assistance.  According to Dr. Coca:

Ms. Von Drasek came to see me because she was having difficulties at work. Because of Ms. Von Drasek's bipolar disorder, she can become easily overwhelmed and confused.  When she feels overwhelmed, her anxiety is heightened, and she can face difficulty processing information.  This can lead to mistakes being made and an inability to follow through or to request assistance. For example, when Ms. Von Drasek is in a heightened state of anxiety, it can be exceedingly difficult for her to hear and understand instructions, to remember instructions, to comprehend instructions, and to follow instructions.  This makes it extremely difficult for Ms. Von Drasek to meet tight deadlines.  If she is anxious and rushing, she may not take the time to obtain information she needs to successfully complete the assignment. It can also cause her to fear and avoid interacting with others.  In short, Ms. Von Drasek's bipolar disorder, if not accommodated, can interfere with every aspect of her performance.

Id.

On April 1, 2010, Rachel Dietzel, Supervisory Chemist, Pesticides GC Group and Ms. Von Drasek's first level supervisor, placed Ms. Von Drasek on a Performance Improvement Plan (hereinafter PIP).  Doc. 7-1 at 2-6 (PIP).  Thereafter, Ms. Von Drasek provided Dr. Coca with a Family Medical Leave Act (hereinafter FMLA) form, which Dr. Coca completed on September 29, 2010.  Ex. 5 at 3 (FMLA form).  The form identified Plaintiff's disabilities.  However, on Friday, October 1, 2010, before Ms. Von Drasek submitted the form, Ms. Dietzel issued a Proposal to Remove her from federal service for poor performance.  Doc. 7-1 at 8-14 (Proposal). On the morning of Tuesday, October 5, 2010, Ms. Von Drasek notified Ms. Dietzel that she had a disability and needed accommodation.  Doc. 7-1 at 16 (E-mail).  On or about October 8, 2010, Ms. Von Drasek provided the Defendant with the FMLA form completed by Dr. Coca.  Ex. 5 at 1-3 (FMLA form); Ex. 6 (E-mail).

On October 13, 2010, undersigned counsel contacted Ms. Dietzel and Anthony Gipson, Labor and Employee Relations Specialist, to address issues involving the proposed removal and to reiterate Ms. Von Drasek's request for accommodation.  Ex. 7 (Fitch letter).  The letter also explained that a statement from Ms. Von Drasek's treating physician was being obtained in

support of her request for accommodation.  Id.

On October 14, 2010, undersigned counsel initiated discussions with the Defendant's reasonable accommodation specialist, Saundra Anderson, and ascertained the Defendant's procedure for requesting a reasonable accommodation.  Ex. 8 at 2-3 (E-mails).  As a result of those conversations, Ms. Von Drasek submitted a formal, written request for reasonable accommodation on November 4, 2010, which included a detailed letter from Dr. Coca describing Ms. Von Drasek's disability, the major life activities that were affected, the impact of Ms. Von Drasek's mental impairment on her ability to perform her job, and the requested accommodations.  Ex. 4 at 4-5 (Pl.'s Req. Reas. Acc.).  As an accommodation, Dr. Coca requested that Ms. Von Drasek be provided written instructions for all tasks, additional time to complete tasks, and reassignment.  Id. at 5.  In addition, on November 10, 2010, Ms. Von Drasek provided the Defendant with a signed medical release authorizing the Defendant to speak directly with Dr. Coca and to obtain her medical documentation.  Doc. 7-1 at 32.

On November 23, 2010, Accommodation Specialist Anderson notified Ms. Dietzel of the particular accommodations being requested by Ms. Von Drasek.  Ex. 16 at 1-2 (E-mails).  Ms. Anderson informed Ms. Dietzel that a decision-maker for Ms. Von Drasek's request should be identified, that the decision-maker should notify Ms. Von Drasek that a determination on her reasonable accommodation request would be received within 15 days after Ms. Anderson's office issued a recommendation, and that the decision maker had a duty to engage in an interactive dialogue with Ms. Von Drasek throughout the accommodation process.  Id.  Ms. Dietzel was the decision maker.  Doc. 7-1 at 40 (Removal Decision); Ex. 10 (Denial Reas. Acc.).  Shortly thereafter, Ms. Anderson informed Ms. Dietzel that an employee could request accommodation at any time, and if it was determined that the employee is disabled, the Defendant must take steps

6

to accommodate her.  Ex. 11 (E-mail).

On December 16, 2010, Dr. Lawrence P. Saladino, Federal Occupational Health Service, Department of Health and Human Services, who was reviewing Ms. Von Drasek's medical documentation on behalf of the Defendant, faxed a supplemental form to Dr. Coca which she completed and returned on December 27, 2010.  Doc. 7-1 at 35 (Dr. Saladino's Assessment).

On December 23, 2010, Ms. Von Drasek submitted her written reply to the Defendant's proposed removal.  Ex. 2 (Pl.'s Written Reply to Proposal to Remove).  In the reply, Ms. Von Drasek identified her disability, requested a reasonable accommodation, and outlined the Rehabilitation Act and the Defendant's responsibilities thereunder.  Id.  Ms. Von Drasek also established that she had performed satisfactorily during her years as a GS-9 Chemist for the USDA.  Id. at 4, 6-45; Ex. 12 at 2 (Def.'s Resp. Admis. 19).

On December 27, 2010, Dr. Saladino provided his assessment of Ms. Von Drasek, which was based purely on a review of documents, to Saundra Anderson.  Doc. 7-1 at 34-36 (Dr. Saladino's Assessment).  Dr. Saladino concluded that Ms. Von Drasek was substantially impaired in several major life activities, including thinking, concentrating, interacting with others, working, and sleeping and, therefore, was entitled to accommodation.  Id. at 36.  He agreed with Dr. Coca that Ms. Von Drasek should be provided written instructions, as much as administratively possible, and recommended providing her with additional time to complete assignments, if possible.  Id.  With respect to the request for reassignment, Dr. Saladino stated: "The information obtained from Dr. Coca regarding reassignment is vague and nonspecific, and does not clearly explain the medical benefit to be obtained from this request; therefore, it is not possible to recommend granting such a request at this time."  Id.  Neither Dr. Saladino, nor anyone else from the Defendant, contacted Dr. Coca to request additional information regarding

the request for reassignment.  Ex. 12 at 4-5 (Def.'s Resp. Interrog. 7), at 5 (Def.'s Resp. Interrog. 8), at 6 (Def.'s Resp. Interrog. 13).  Likewise, no one ever sought additional information from Ms. Von Drasek.  Ex. 3 ¶¶ 12-14 (Von Drasek Aff.).

On April 18, 2011, Ms. Dietzel denied Ms. Von Drasek's request for reasonable accommodation solely on the basis that Ms. Von Drasek was not qualified to perform her job.  Ex. 10 (Denial Reas. Acc.).  Defendant did not offer Ms. Von Drasek any alternate accommodations.  Id.; Ex. 12 at 3 (Def.'s Resp. Admis. 21).  On April 20, 2011, Ms. Dietzel removed Ms. Von Drasek from federal service, effective April 22, 2011.  Doc. 7-1 (Removal Decision).

## III.   ARGUMENT

### A.   LEGAL STANDARDS

#### 1.   <u>Failure to State a Claim under Federal Rule of Civil Procedure 12(b)(6).</u>

Federal Rule of Civil Procedure 12(b)(6) provides that a case may be dismissed upon defendant's motion when the plaintiff fails in her complaint to "state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. <u>Hishon v. King & Spaulding</u>, 467 U.S. 69, 73 (1984).  In considering a motion to dismiss based on Rule 12(b)(6), the court must accept the plaintiff's factual allegations as true and draw all reasonable inferences in favor of the plaintiff.  <u>Hishon</u>, 467 U.S. at 73 (for purposes of a 12(b)(6) motion the plaintiff's allegations must be accepted as true); <u>Hoover v. Ronwin</u>, 466 U.S. 558, 565-66 (1984) (same).  Significantly, at this stage of the proceedings, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to

support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Id., at 570, 127 S.Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id., at 556, 127 S.Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Ibid. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id., at 557, 127 S.Ct. 1955.

Id. at 678 (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).

A motion under Federal Rule of Civil Procedure 12(b)(6) must be treated as a motion for summary judgment if "matters outside the pleadings are presented to and not excluded by the court." Fed. R. Civ. P. 12(d).  Here, both parties have submitted matters outside of the pleadings; therefore, the Defendant's Motion should be properly construed as a motion for summary judgment.  This is particularly true here because the Defendant has not offered any argument that Plaintiff's Complaint fails to state a claim.  As set forth herein, it plainly does.

**2.      Summary Judgment Under Federal Rule of Civil Procedure 56.**

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The party opposing summary judgment must "have the advantage of the court's reading the record in the light most favorable to [her], will have [her] allegations taken as true, and will receive the benefit of the doubt when [her] assertions conflict with those of the movant."  1OA C. Wright and A. Miller, Federal Practice and Procedure § 2716 nn. 4-6 (footnotes omitted); Borgo v. Goldin, 204 F.3d 251, 254 (D.C. Cir. 2000).  It is also well established that a court cannot make

credibility determinations or weigh evidence, as these are functions reserved exclusively for a

jury.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

### B.    THE DEFENDANT VIOLATED THE REHABILITATION ACT WHEN IT FAILED TO ACCOMMODATE MS. VON DRASEK.

The Rehabilitation Act of 1973[1] requires federal agencies to provide reasonable

accommodation to qualified employees with disabilities, unless doing so would cause undue

hardship.  EEOC Policy Guidance On Exec. Order 13164: Establishing Procedures To Facilitate

The Provision Of Reasonable Accommodation, Oct. 20, 2000 (hereinafter EEOC Policy

Guidance On Exec. Order 13164), *available at*

http://www.eeoc.gov/policy/docs/accommodation_procedures.html.  "In this Circuit, failure to

accommodate claims are not analyzed under the McDonnell Douglas formula, but have their own

"specialized legal standards."  Heasley v. D.C. Gen. Hosp., 180 F. Supp. 2d 158, 168 (D.D.C.

2002) (citing Aka v. Washington Hospital Center, 156 F.3d 1284, 1288 (D.C. Cir.1998)).  To

prevail on a claim alleging a failure of accommodation, an employee must prove that (1) she is

disabled; (2) the employer was aware of her disability; (3) with accommodation, she could

perform the essential functions of the job she holds or desires; and (4) she was denied a

reasonable accommodation.  Lee v. Dist. of Columbia, 920 F. Supp. 2d 127, 134 (D.D.C. 2013);

42 U.S.C. § 12111(8) (2009).  Upon doing so, the burden then shifts to the Defendant to prove

---

[1] Congress incorporated the ADA's anti-discrimination and anti-retaliation provisions into the Rehabilitation Act of 1973, which is the exclusive remedy for federal employees challenging discrimination on the basis of disability.  Bonnette v. Shinseki, 907 F. Supp. 2d 54, 60 (D.D.C. 2012) (citing 29 U.S.C. § 791, et seq. (2006)). "The standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under title I of the Americans with Disabilities Act of 1990 (42 U.S.C. 12111 *et seq.*) and the provisions of sections 501 through 504, and 510, of the Americans with Disabilities Act of 1990 (42 U.S.C. 12201 to 12204 and 12210), as such sections relate to employment."  29 U.S.C. § 794(d) (2002).

that accommodating an employee would be an undue hardship.  <u>Barth v. Gelb</u>, 2 F.3d 1180, 1187 (D.C. Cir. 1993).

Defendant moved for summary judgment on Plaintiff's accommodation claim on the basis that she could not perform the essential functions of her position.  Doc. 7 at 16 (Def.'s Mot. Dismiss).  Defendant argued that Plaintiff could not perform her job even with two of the accommodations she requested.  <u>Id.</u>  This argument fails as a matter of law because a person is entitled to accommodation whether the accommodation would enable her to perform the essential functions of her position or a vacant position for which she is qualified.

Defendant then summarily dismisses Plaintiff's third requested accommodation, reassignment, by asserting that Plaintiff has not shown it would be effective or reasonable given that she was not able to perform in her position of record with two other accommodations. Defendant's argument reflects a misapprehension of its obligations under the Rehabilitation Act and must be rejected.

Instead, because there are no disputes of material fact and Plaintiff is entitled to judgment as a matter of law, summary judgment on this claim must be granted for Plaintiff because she has established a prima facie case of failure to accommodate and the Defendant has not proven that accommodating her would have been an undue hardship.

### 1.    <u>Ms. Von Drasek Has a Disability.</u>

Disability is defined, in part, as "[a] physical or mental impairment that substantially limits one or more of the major life activities of such individual . . . ." 29 C.F.R. § 1630.2(g)(1)(i) (1991).  The Defendant admits that Ms. Von Drasek is disabled as defined by the Rehabilitation Act.  Ex. 12 at 1 (Def.'s Resp. Admis. 1); <u>see also</u> Doc. 7 at 6 n.1 (Def.'s Mot. Dismiss).

### 2.     __Defendant was Aware of Ms. Von Drasek's Disability.__

The Defendant has acknowledged that Ms. Von Drasek notified her supervisor of her disability on October 5, 2010, prior to her removal.  Doc. 7 at 4 ¶ 4 (Def.'s Stmt. Undisputed Facts).

### 3.     __Ms. Von Drasek Was a Qualified Disabled Employee.__

"[A]n individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires" is a qualified individual entitled to accommodation.  42 U.S.C. § 12111(8) (2009).  When determining whether an employee is able to perform the essential functions of a position with or without reasonable accommodation, the "position" is not limited to the position held by the employee, but also includes positions that the employee could hold as a result of reassignment.  Aka v. Washington Hosp. Ctr., 156 F.3d 1284, 1301 (D.C. Cir. 1998); see also 29 C.F.R. § 1630.2(o)(2)(ii)) (1991).

Defendant's April 18, 2011 letter denying Plaintiff's reasonable accommodation stated: "you are not a qualified individual with a disability based on the fact that you can not [sic] perform the essential functions of your job even with accommodations."  Ex. 10 at 1 (Denial Reas. Acc.).  This statement is an incorrect recitation of the law.  In concluding that Ms. Von Drasek was not a qualified disabled employee because she could not perform her position of record even with accommodation, the Defendant ignored its obligation to consider whether she could perform the essential functions of another vacant position for which she was qualified.  Aka, 156 F.3d at 1304 ("[T]he ADA places a duty on the employer to 'ascertain whether he has some job that the employee might be able to fill'") (quoting Miller v. Illinois Dep't. of Corrections, 107 F.3d 483, 487 (7th Cir. 1997)).

If the Defendant had conducted the proper analysis, it would have reached the incontrovertible conclusion that Ms. Von Drasek is a qualified individual with a disability. However, Defendant never conducted a search for a vacant position for which Ms. Von Drasek was qualified.  Ex. 12 at 4-5 (Def.'s Resp. Interrog. 7).

Concomitantly, if an employee can demonstrate that there were vacancies available for which she was qualified, then she is deemed qualified for purposes of the Rehabilitation Act. Aka, 156 F.3d at 1304 n.27.  It is undisputed that there were numerous vacant positions available for which Ms. Von Drasek was qualified with or without accommodation.  Ex. 13 (Vacancy Announcements).  Shortly after Ms. Von Drasek received the denial of reasonable accommodation and the decision to remove her from federal service (they were received on the same day), she conducted a search on USAJobs.gov.  Id. at 1-13.  She discovered that the FDA had "many vacancies" for GS-1320-7/9/11 Chemists in Bothell, WA and seven vacancies for a GS-1320-9/11/12 chemist in Jefferson, AR.  Id.  During a subsequent search on August 4, 2011, Ms. Von Drasek learned there were three vacancies for a GS-1320-7/9 Chemist and three vacancies for a GS-1320-11/12 Chemist in Winchester, MA.  Id. at 14-24.

Ms. Von Drasek's skill, experience, and education qualified her for all of these positions as reflected by her successful performance throughout her seven years as a GS-9 Chemist with USDA (ex. 2 at 6-45 (Pl.'s Written Reply to Proposal to Remove)) and the fact that she was selected as the best qualified candidate for her GS-11 Chemist position with Defendant.  In addition, Ms. Von Drasek's Curriculum Vitae ("CV"), which was in the Defendant's possession, indicated prior skills performed and positions held, as well as her 3.3 GPA while pursuing her Masters degree in Geochemistry.  Ex. 1 (Pl.'s resume).  The CV further reflected awards for Plaintiff's work in chemistry, and her election into the Iota Sigma Pi National Honor Society,

which promotes the advancement of women in chemistry by recognizing superior scholastic

achievement and high professional competence.  Id. at 7.  Ms. Von Drasek's CV listed six

professional publications which she wrote or co-wrote.  Id. at 8.  It also identified two

Certificates of Merit received for completing 95% of program analysis within the expected time

frames and for providing exceptional technical support, and two Certificates of Appreciation for

improving deliverables and raising laboratory productivity.  Id. at 9.  Similarly, the Defendant

maintained copies of Ms. Von Drasek's school transcripts which reflect satisfactory to

exceptional performance in subjects related to chemistry.  Ex. 14 (Transcript).

Given the numerous available jobs to which Ms. Von Drasek could have been reassigned

and her outstanding credentials, she clearly met the definition of "qualified."

### 4. The Defendant Refused to Accommodate Ms. Von Drasek.

It is undisputed that the Defendant did not accommodate Ms. Von Drasek; it terminated

her instead.  It is also undisputed that the Defendant did not propose any alternative

accommodations.  Ex. 12 at 3 (Def.'s Resp. Admis. 21).

"Reassignment is a form of reasonable accommodation that **must** be provided, absent

undue hardship, to an employee who, because of a disability, can no longer perform the essential

functions of the position s/he holds, with or without reasonable accommodation."  EEOC Policy

Guidance On Exec. Order 13164 at (E)(21) (emphasis added), *available at*

http://www.eeoc.gov/policy/docs/accommodation_procedures.html; see also Exec. Order 13164,

65 Fed.Reg. 46565, ¶ 1(b)(7) (July 26, 2000).  The Defendant maintains that it had already

provided Ms. Von Drasek with written instructions and additional time (albeit not as

accommodations), and her performance was still unacceptable.  Ex. 10 at 2 (Denial Reas. Acc.).

Therefore, it concluded that these two requested accommodations would not enable Ms. Von

Drasek to perform the essential functions of her position.  Id.  Given the Defendant's conclusion that Ms. Von Drasek could not perform her position of record, even with the accommodations she requested, it was incumbent on the Defendant to seek a reassignment for Ms. Von Drasek. Aka, 156 F.3d at 1301.

The reassignment should be to a vacant position, which is defined as a position that is "available when the employee asks for reasonable accommodation, or that the employer knows that it will become available within a reasonable amount of time."  Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act (hereinafter EG: Reas. Acc. Undue Hardship) ¶ 24 (Reassignment) (Oct. 17, 2002), *available at* http://www.eeoc.gov/policy/docs/accommodation.html.  "A position is considered vacant even if an employer has posted a notice or announcement seeking applications for that position."  Id.

The Defendant refused to identify positions that were available at the time Ms. Von Drasek requested reasonable accommodation.  Ex. 12 at 5 (Def.'s Resp. Interrog. 9).  However, it is undisputed that there were numerous vacant positions available on and shortly after the date on which the Defendant refused to accommodate Ms. Von Drasek.  Ex. 13 (Vacancy Announcements).  Given the numerous positions that Ms. Von Drasek found on USAJobs.gov and the Defendant's contention that identifying vacant positions for Appellant would have been an undue burden given the size of the Defendant, Ex. 12 at 5 (Def.'s Resp. Interrog. 9), it is plain that the Defendant could have readily located a reassignment for Ms. Von Drasek had it tried.

An employer's obligation to offer reassignment to a vacant position is not "limited to vacancies within an employee's office, branch, agency, department, facility, personnel system (if the employer has more than a single personnel system), or geographical area[.]" EG: Reas. Acc. Undue Hardship  ¶ 27, *available at* www.eeoc.gov/policy/docs/accommodation.html.

Complying with these requirements, the Defendant's own policy specifies that it will work with the employee to identify "all vacant positions within the agency for which the employee may be qualified" and all such vacancies that are expected to become available in the next 60 days.  Ex. 15 at 13 ¶ 13 (FDA Reas. Acc. Policy).[2]  In addressing reassignment as reasonable accommodation

> the employer, as part of the interactive process, should ask the employee about his/her qualifications and interests. Based on this information, the employer is obligated to inform an employee about vacant positions for which s/he may be eligible as a reassignment.  . . .   When an employer has completed its search, identified whether there are any vacancies (including any positions that will become vacant in a reasonable amount of time), notified the employee of the results, and either offered an appropriate vacancy to the employee or informed him/her that no appropriate vacancies are available, the employer will have fulfilled its obligation."

EG: Reas. Acc. Undue Hardship ¶ 28, *available at* www.eeoc.gov/policy/docs/accommodation.html.  The Defendant failed to comply with any of these regulations and policies.

Clearly, the Defendant wholly failed to engage in the interactive process.  See 29 C.F.R. § 1630.2(o)(3) (1991).  "When the interactive process breaks down, courts should attempt to isolate the cause of the breakdown and then assign responsibility to the culpable party." Woodruff v. LaHood, 777 F. Supp. 2d 33, 42 (D.D.C. 2011) (internal quotations omitted). Indeed, Defendant's own policy requires the decision-maker to speak with the employee.  Ex. 15 at 9 ¶ 8 (FDA Reas. Acc. Policy).  Yet, it is undisputed that after the initial discussion on October 5, 2010, when Ms. Von Drasek requested accommodation, the decision maker, Ms. Dietzel,

---

[2] Significantly, "**[i]t must be noted that in talking about reassignment, the term 'agency' refers to DHHS** [Department of Health and Human Services]."  Ex. 15 at 13 ¶ 13 (FDA Reas. Acc. Policy) (emphasis in original).

never spoke to Ms. Von Drasek again about accommodation.[3]  Ex. 3 ¶ 16 (Von Drasek Aff.); Ex

12 at 4-5 (Def.'s Resp. to Interrogs. 7, 8).

Similarly, after the initial submission of information to the reasonable accommodation

specialist, no one from the Defendant contacted Ms. Von Drasek or her attorney to discuss any

aspect of Ms. Von Drasek's request for reasonable accommodation, her request for reassignment,

her interests, her skills, or her geographic flexibility.  Ex. 3 ¶ 12 (Von Drasek Aff.).  Likewise, no

one contacted her or Dr. Coca to obtain more information to support her request for

reassignment.  Id. ¶¶ 12-16; Ex. 12 at 5 (Def.'s Resp. Interrog. 8).  See Woodruff, 777 F. Supp.

2d at 41 ("Once the employer knows of the disability and the employee's desire for

accommodations, 'it makes sense to place the burden on the employer to request additional

information that the employer believes it needs.'") (quoting Taylor v. Phoenixville Sch. Dist.,

184 F.3d 296, 315 (3d Cir.1999)).

The Defendant's silence is particularly troubling in light of the advice provided by the

reasonable accommodation specialist to Ms. Dietzel.  On March 29, 2011, after Ms. Dietzel

informed Ms. Anderson that Ms. Von Drasek could not be accommodated in her office, Ms.

Anderson correctly instructed Ms. Dietzel that the Defendant would need to offer Ms. Von

Drasek reassignment as an accommodation.  Ex. 16 at 4-5 (E-mails).  Ms. Anderson said she

would prepare a memo asking Ms. Von Drasek if she wished to be reassigned to a position

elsewhere in FDA.  Id.  However, no such memo was ever provided to Ms. Von Drasek and no

contact was made with her to discuss reassignment.  Ex. 3 ¶¶ 12-16 (Von Drasek Aff.).  Instead,

on April 18, 2011, the Defendant denied Ms. Von Drasek's request for reasonable

---

[3] The only subsequent communication was an October 8, 2010 email from Ms. Dietzel informing Ms. Von Drasek that her accommodation request would have no impact on Ms. Dietzel's removal decision.  Ex. 6.

accommodation, and a few days later terminated her.

Defendant's delay addressing Plaintiff's accommodation request justifies summary judgment for Plaintiff and denial to Defendant.  See Pantazes v. Jackson, 366 F. Supp. 2d 57, 70 (D.D.C. 2005) ("Thus, if a jury could conclude that HUD failed to engage in good faith in the interactive process, and that failure led to defendant not according reasonable accommodations to Pantazes *in a timely manner*, summary judgment [for Defendant] cannot be granted.") (emphasis added).  The Defendant's delay in responding to Plaintiff's request for reasonable accommodation standing alone is actionable under the Rehabilitation Act.  Mogenhan v. Napolitano, 613 F.3d 1162, 1168 (D.C. Cir. 2010) ("[T]here are certainly circumstances in which a long-delayed accommodation could be considered unreasonable and hence actionable under the ADA.") (internal quotations omitted) (citing cases).

First, the only reason for the delay was because the Defendant was determined not to accommodate Ms. Von Drasek.  The Defendant's physician concluded on December 27, 2010, that Ms. Von Drasek was disabled and entitled to accommodation.  Doc. 7-1 at 34-36 (Dr. Saladino's Assessment).  This information was communicated to Ms. Dietzel on January 14, 2011, along with the requirement that Ms. Dietzel had 15 days to respond to Ms. Von Drasek's reasonable accommodation request.  Ex. 17 (Anderson letter to Dietzel).  According to the Defendant's policy, taking longer to process accommodation requests may occur only under extenuating circumstances,[4] none of which were present here.  See Ex. 15 at 8 (FDA Reas. Acc.

---

[4] Examples of extenuating circumstances include outstanding requests for medical information; equipment purchase; back-ordered equipment; hiring of new staff; and removal of architectural barriers. Ex. 15 at 8 (FDA Reas. Acc. Policy).  The Defendant's policy clearly states that extenuating circumstances cover "limited situations" involving unforeseen or unavoidable events. Id. (emphasis in original).  Moreover, if extenuating circumstances exist, the Defendant **must** notify the employee. Id. (emphasis in original).

Policy). Instead, Ms. Dietzel spent the next four months (far longer than 15 days) doing everything she could to remove and *not* accommodate Ms. Von Drasek. See, e.g., Ex. 18 (E-mails); Ex. 19 (E-mails); Ex. 16 (E-mails); Ex. 20 (E-mails). Defendant's determination not to accommodate Plaintiff is demonstrated by its baseless speculation that reassigning Ms. Von Drasek would simply result in another PIP or accommodation request. Ex. 19 at 1 (E-mails).

Second, the length of the delay was six months (October 2010 - April 2011), which in light of the simplicity of the request, is unjustifiable. Third, the delay was attributable solely to the Defendant. After requesting reasonable accommodation on October 5, 2010, Ms. Von Drasek sought the assistance of her treating physician to obtain supporting documentation for her request. As soon as the supporting documentation was obtained, a formal request with documentation was submitted to the Defendant on November 4, 2010, and a full medical release was submitted to the Defendant on November 10, 2010. Thereafter, Ms. Von Drasek waited futilely for a response until April 21, 2011, when she received the letters denying her reasonable accommodation and effecting her removal. Accordingly, there is no excuse for the delay, and the Defendant's dilatory behavior, while seeking a justification for not accommodating Ms. Von Drasek, should not be sanctioned. See Faison v. Vance-Cooks, 896 F. Supp. 2d 37, 62 (D.D.C. 2012) ("[T]he absence of good faith, including unreasonable delays caused by an employer, can serve as evidence of an ADA violation.") (quoting Pantazes, 366 F. Supp. 2d at 70.

### 5.   The Defendant Has Failed to Meet Its Burden of Proof That Accommodating Ms. Von Drasek Would Be An Undue Hardship.

Reassignment is not required if doing so would cause the Defendant an undue hardship. EEOC Policy Guidance On Exec. Order 13164 at I(A), *available at* http://www.eeoc.gov/policy/docs/accommodation_procedures.html. "An undue hardship means

that a specific accommodation would require significant difficulty or expense. This determination, which must be made on a case-by-case basis, considers factors such as the nature and cost of the accommodation needed and the impact of the accommodation on the operations of the agency." Id.; see also Ex. 15 at 15 (Defendant's policy comports with EEOC Policy Guidance On Exec. Order 13164). It is the Defendant's burden to prove that accommodating Ms. Von Drasek would be an undue hardship. Barth v. Gelb, 2 F.3d 1180, 1187 (D.C. Cir. 1993).

Undue hardship occurs when an employer encounters significant difficulty or expense taking into consideration the following factors:

1.      The cost of the accommodation;

2.      The financial resources of, the number of persons employed by, and the effect on expenses and resources of the Agency;

3.      The overall size of the business of the covered entity with respect to the number of employees, and the number, type and location of facilities;

4.      The Agency's type of operation including the composition, structure and functions of the workforce, and the geographic separateness and administrative or fiscal relationship of the facility or facilities in question to the covered entity; and

5.      The impact of the accommodation upon the operation of the Agency.

29 C.F.R. §1630.2(p) (1991). The Defendant has not, and cannot, establish undue hardship as a matter of law and, indeed, it does not assert that any of these factors exist. See Ex. 21 (Def.'s Supp. Resp. Interrog. 6).

Assessing the above factors, reassigning Plaintiff would not cost the Defendant any more than hiring a new employee; there would be no financial impact on the Defendant. The Department of Health and Human Services is a gargantuan federal employer with offices throughout the country. A solitary reassignment would have no impact on its operations. This is

particularly true because several of the vacancy announcements authorized possible moving

expenses.  Ex. 13 at 4, 16, 21.

Accordingly, the Defendant cannot meet its burden of proving undue hardship, and its

failure to accommodate Ms. Von Drasek was a violation of the Rehabilitation Act.  Summary

judgment should be granted to Plaintiff on her failure to accommodate claim and denied to the

Defendant.

**C.      THE DEFENDANT'S ARGUMENT THAT IT COULD REFUSE TO
ACCOMMODATE MS. VON DRASEK BECAUSE SHE REQUESTED A
REASONABLE ACCOMMODATION AFTER RECEIVING A NOTICE
OF PROPOSED REMOVAL FOR POOR PERFORMANCE IS
INCONSISTENT WITH LAW, REGULATION, AND POLICY.**

Despite the plain language of the ADA/ADAAA and the Rehabilitation Act, the

Defendant argues that it is exempted from complying with the Rehabilitation Act, in this

instance, because Ms. Von Drasek requested a reasonable accommodation two business days

after the Defendant proposed her removal for poor performance caused by her disability.  Doc. 7

at 14 (Def.'s Mot. Dismiss).  The Defendant's argument is premised on Equal Employment

Opportunity Commission (hereinafter EEOC or Commission) case law that an employer is not

required to excuse misconduct – even if it is related to a disability – if it would not excuse the

same type of misconduct committed by a non-disabled employee, and the extension of this

principle to hold that the deadline for requesting a reasonable accommodation occurs with the

issuance of a notice of proposed removal.  That holding has now been applied to removals for

both performance and misconduct.  The Commission has never analyzed whether its holding in

these cases is consistent with its clearly expressed Guidance that accommodation – at least in

performance cases such as this one – can be requested at any time.

Excusing employers from complying with the Rehabilitation Act when an employee

requests a reasonable accommodation after receiving a proposal to remove based on poor performance is a violation of D.C. Circuit precedent, the plain language of the Rehabilitation Act, federal regulations governing disciplinary proposals, and other EEOC policy and guidance. A thorough review of the law and policy governing accommodation requests leads to only one conclusion: an employee may request a reasonable accommodation after receiving a proposal to remove for poor performance and an employer is required to provide the accommodation unless doing so would cause undue hardship.

      1.      **The D.C. Circuit Has Held that a Request for Accommodation is Timely if Made Before the Decision to Remove is Issued.**

The D.C. Circuit has definitively held that a request for accommodation is timely as long as the employer can still act on it. Singh v. George Washington Univ. Sch. of Med. and Health Sciences, 508 F.3d 1097, 1105 (D.C. Cir. 2007). In Singh, the plaintiff did not notify the school of her diagnosis or disability until after a faculty committee had already recommended her dismissal. Id. The court concluded that because Singh was still a student at the time she requested an accommodation, and the school was still in a "position to respond" to her request, the request was timely. Id.

It is clear that an employer cannot violate the Rehabilitation Act if it did not know about the impairment **when it made the challenged decision.** Adams v. Rice, 531 F.3d 936, 951 (D.C. Cir. 2008) ("the plaintiff must show 'that the employer knew or had reason to know about the employee's alleged *impairment* when it made an adverse employment decision.'") (emphasis in original) (quoting U.S. Dep't of State v. Coombs, 482 F.3d 577, 579 (D.C. Cir. 2007)). Concomitantly, then, and in keeping with Singh, if the employer knew about an employee's disability and request for accommodation when it made the decision to terminate, the employee

states a claim under the Rehabilitation Act.  That is precisely what occurred here: the Defendant

was fully aware of Plaintiff's disability and need for accommodation months before it issued the

decision to terminate her, but it terminated her without any attempt to accommodate her.

Because there is no dispute regarding these material facts, summary judgment in Plaintiff's favor

on her failure to accommodate claim should be granted.

> **2.     The Plain Language of and the Policy Underpinning the
> Rehabilitation Act and the Americans with Disabilities Act Do Not
> Allow a Federal Agency to Refuse to Accommodate an Employee
> When the Employee Has Requested Accommodation Prior to Being
> Removed For Poor Performance Stemming From a Disability.**

"As in all statutory construction cases, we begin with 'the language itself [and] the

specific context in which that language is used.'" McNeill v. United States, 131 S. Ct. 2218,

2221 (2011) (quoting Robinson v. Shell Oil Co., 519 U.S. 337, 341 (1997)).  The Rehabilitation

Act of 1983 provides that "[n]o otherwise qualified individual with a disability . . . shall, solely

by reason of her or his disability, be excluded from the participation in, be denied the benefits of,

or be subjected to discrimination under any program or activity receiving Federal financial

assistance or under any program or activity conducted by any Executive agency . . . ."  29 U.S.C.

§ 794(a) (2002).  Furthermore, "[n]o covered entity shall discriminate against a qualified

individual on the basis of disability in regard to . . . advancement, or discharge of employees, . . .

and other terms, conditions, and privileges of employment" which includes "not making

reasonable accommodations to the known physical or mental limitations of an otherwise

qualified [employee] with a disability . . ., unless such covered entity can demonstrate that the

accommodation would impose an undue hardship on the operation of the business of such

covered entity . . . ."  42 U.S.C. § 12112(a) and (b)(5)(A) (2009).  The Commission's regulations

unambiguously reiterate this mandate.  29 C.F.R. § 1630.9(a) (1991).

The context of both the ADA and the Rehabilitation Act supports the inclusive nature of these laws.  "In passing the ADA, Congress recognized that 'discrimination against individuals with disabilities continues to be a serious and pervasive social problem' and that the 'continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity.' 42 U.S.C. 12101(a)(2)."  29 C.F.R. Pt. 1630, App. (2011).

In an effort to ensure greater protection for individuals with disabilities, in 2008, the ADA was amended by the ADAAA.  When the ADA was amended, there were no restrictive deadlines by which an employee was required to request accommodation added to the law.  Rather, the express purpose of the ADAAA was to eliminate restrictive holdings of the Supreme Court which narrowed the application of the ADA, and "[t]o convey that **it is the intent of Congress that the primary object of attention in cases brought under the ADA should be whether entities covered under the ADA have complied with their obligations** . . . ."  29 C.F.R. Pt. 1630, App. (2011) (emphasis added).

Neither the ADA, the Rehabilitation Act, nor the regulations implementing these laws require that a request for reasonable accommodation be made at a certain time.  On the contrary, they mandate that all qualified disabled employees, and an individual remains an employee until a termination is effected, must be accommodated absent undue hardship.

       **3.**      <u>**Neither EEOC Enforcement Guidance Nor the Defendant's Policy Permit the Defendant to Refuse to Accommodate Ms. Von Drasek Because an Employee Can Request Accommodation At Any Time**</u>.

In multiple separate documents dating back to 1992, the Commission has repeatedly

confirmed that "[a]n individual with a disability may request a reasonable accommodation **at any time** during the application process or during the period of employment."  EG: Reas. Acc. Undue Hardship at Question 4 (emphasis added), *available at*

http://www.eeoc.gov/policy/docs/accommodation.html; see also EEOC Enforcement Guidance on the ADA and Psychiatric Disabilities (hereinafter EG: Psych. Disabilities) at Question 20 (Mar. 25, 1997) ("An individual with a disability is not required to request a reasonable accommodation at the beginning of employment.  S/he may request a reasonable accommodation **at any time** during employment.") (emphasis added), *available at*

http://www.eeoc.gov/policy/docs/psych.html; EEOC:  The ADA: Applying Performance and Conduct Standards To Employees With Disabilities (hereinafter Perf. and Conduct Standards) at III(A)(Question 5) (Sept. 2008) ("The ADA does not compel employees to ask for accommodation at a certain time.  Employees may ask for reasonable accommodation **before or after being told of performance problems**.") (emphasis added), *available at*

http://www.eeoc.gov/facts/performance-conduct.html; Technical Assistance Manual: Title I of the ADA ( hereinafter TAM) at VII(7.7) (Jan. 1992), *available at*

http://askjan.org/links/adatam1.html.  Affirming the Commission's Guidance, the Defendant's policy explicitly states:  "An individual with a disability may request a reasonable accommodation **whenever s/he chooses**, even if she has not previously disclosed the existence of a disability."  Ex. 22 at 13 ¶ 4.6(2) (emphasis added) (HHS Reas. Acc. Policy); Ex. 15 at 4 (same) (FDA Reas. Acc. Policy).[5]  This principle comports with the Rehabilitation Act which

---

[5] Nowhere in the Defendant's policy and procedures manuals does it state, or even imply, that there is any deadline whatsoever for requesting accommodation, much less that the Defendant does not have to accommodate an employee who requests a reasonable accommodation after a proposal to remove has been issued.  Ex. 22 et seq. (HHS Reas. Acc.

does not establish any limitations on when an accommodation may be requested.

Although the Commission suggests that "it may be in an employee's interest to request a reasonable accommodation before performance suffers or conduct problems occur," this is merely a recommendation, not a requirement.  Perf. and Conduct Standards at III(A)(Question 5), *available at* http://www.eeoc.gov/facts/performance-conduct.html.  Indeed, the EEOC correctly states that "[a]n employer may not discipline or terminate an employee with a disability if the employer has refused to provide a requested reasonable accommodation that did not constitute an undue hardship, and the reason for unsatisfactory performance was the lack of accommodation."  TAM at VII(7.7), *available at* http://askjan.org/links/adatam1.html.

> **4.** **Federal Law Dictates that the Defendant Consider Ms. Von Drasek's Request for Reasonable Accommodation Because It was Submitted Prior to and Also in Conjunction With Her Written Reply to the Proposed Removal.**

Although an agency may "remove an employee for unacceptable performance," 5 U.S.C. § 4303(a) (1990), the employee is entitled to 30 days advance written notice of the proposed action and "a reasonable time to answer orally and in writing."  Id. at § 4303(b)(1)(C).  Public employees have a property right in continued employment, and the advance written notice and opportunity to answer are two important due process requirements designed to protect an employee against whom an adverse action is proposed.  Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985).  "[I]n the context of federal employment, it has long been recognized that an employee may raise at an oral reply any matter he believes will sway the decision."  Noe

---

Policy); Ex. 15 et seq.  (FDA Reas. Acc. Policy).  On the contrary, the Defendant's policy states that "[t]he reasonable accommodation process begins as soon as the request for the change or identification of a barrier is made."  Ex. 22 at13 ¶ 4.6(1) (HHS Reas. Acc. Policy).

v. U.S. Postal Serv., 28 M.S.P.R. 86, 88-89 (June 17, 1985)[6] (citing Washington v. United States,

147 F. Supp. 284, 288 (Ct. Cl. 1957). The reply is "meant to be a meaningful protection for the

employee" that ensures a "significant conference . . . with management" occurs before an adverse

action is taken. Ricucci v. United States, 432 F.2d 453, 454-55 (Ct. Cl. 1970). The fact that an

employee is entitled to make a reply "implies an intent that the employee may succeed with it . . .

. It is not to be a futile ritual." Id. at 1254.

Federal regulations governing the procedures an agency must follow when it proposes an

employee's removal on performance grounds require the agency to take into consideration any

medical documentation submitted by an employee before it issues a decision. 5 C.F.R. §

432.105(a)(4)(iv) (1993). Although the regulation expresses a preference for medical

documentation to be submitted before the initial notification of unacceptable performance, it

expressly provides that an employee is still allowed to offer medical information after the agency

proposes removal. Id. When the agency receives medical documentation in response to a

proposed removal, the regulations mandate that the agency "shall be aware of the affirmative

obligations of 29 CFR 1613.704" (the reasonable accommodation requirement). Id.

Significantly, during the notice and comment period before the issuance of these

regulations, OPM was confronted with a challenge to the requirement that an agency must

consider medical documentation submitted in response to a proposed removal:

---

[6] Noe is a decision of the U.S. Merit Systems Protection Board, which adjudicates
disciplinary actions taken against federal employees. In Noe, the Board held that notice of a
disability raised for the first time in a response to a notice of proposed removal is timely and puts
the agency under the obligation to accommodate such a handicap. Id. at 88-89; see also
Robinson v. Dept of Treasury, 42 M.S.P.R. 181, 184 n.1 (Oct. 23 1989), aff'd, 904 F.2d 45 (Fed.
Cir. 1990) (same); Cohen v. Dep't of Health & Human Serv., 30 M.S.P.R. 555, 555 n.* (May 9,
1986) (denying the agency's Petition for Review, and citing Noe for the proposition that "a
handicapping condition first raised in an oral reply, if found to exist, puts the agency under
obligation to accommodate . . . .").

One agency stated its belief that the language in the reproposed regulation which allows employees to present pertinent medical information during the notice period before the agency decision, might be interpreted as relieving employees of any responsibility to raise medical issues earlier in the process if they wish the agency to consider it. It noted that, in practice, employees whose performance may be affected by a medical condition have ample opportunity to raise the condition before the notice period, and have it considered by the agency well before it has to decide whether to propose action.

Reduction in Grade and Removal Based on Unacceptable Performance, 54 Fed.Reg. 26172-01 (June 21, 1989). The OPM's response was to clarify "that employees should, whenever possible, raise medical issues (and supply appropriate medical documentation) at the time they are notified by the agency of unacceptable performance or **at the latest**, as part of the employee's response to a proposed reduction in grade or removal action."  Id. (emphasis added). In sum, the OPM considered and rejected the proposition that an employee must submit medical documentation prior to receiving a notice of proposed removal and instead requires agencies to consider medical documentation submitted in response to a proposed removal and to comply with the Rehabilitation Act.

Here, Ms. Von Drasek requested a reasonable accommodation two business days after receiving the Defendant's proposal to remove her for poor performance.  She quickly submitted medical documentation supporting the request, and in her reply to the Proposal she reiterated her request for reasonable accommodation and explained how her disability was impacting her performance.  Under these circumstances, federal law required the Defendant to consider Ms. Von Drasek's request for accommodation and medical documentation and abide by the Rehabilitation Act before issuing its ultimate employment decision.  Defendant's failure to do so based exclusively on the receipt of Ms. Von Drasek's request after the proposal was issued is contrary to 5 C.F.R. § 432.105 and, more importantly, a per se violation of the Rehabilitation

Act.

        **5.**      **To the Extent the EEOC Has Suggested That a Request for Accommodation Can Be Ignored If Submitted after a Proposal to Remove for Poor Performance, It Is Entitled to No Deference Because This Is a Clear Violation of the Rehabilitation Act, Federal Regulations, Policy, and Other EEOC Guidance.**

The Supreme Court has held that the EEOC's interpretive guidelines do not receive deference under <u>Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.</u>, 467 U.S. 837 (1984). <u>Nat'l R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 111 (2002). Rather, the Commission's interpretations are "entitled to respect" under "<u>Skidmore v. Swift & Co.</u>, 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944), but only to the extent that those interpretations have the 'power to persuade.'" <u>Id</u>. In determining whether EEOC Guidance has the power to persuade, the weight it is to be accorded "will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." <u>Skidmore</u>, 323 U.S. at 140. Taking into consideration the factors identified by the Court in <u>Skidmore</u>, for the reasons stated in the previous sections, it is plain that the EEOC's guidance establishing a deadline for requesting reasonable accommodation in performance cases has no power to persuade and, therefore, is entitled to no deference.

The Defendant's argument that it is exempt from the Rehabilitation Act because of the timing of Ms. Von Drasek's reasonable accommodation request is premised upon the EEOC's The ADA: Applying Performance and Conduct Standards to Employees With Disabilities (hereinafter Performance and Conduct Standards) and a handful of Commission cases that are devoid of analysis. Doc. 7 at 15 (Def's Mot. Dismiss). This argument is untenable and must be rejected.

In its Performance and Conduct Standards, the Commission asserts that an employer is not required to withhold disciplinary action, including removal, based on poor performance. Perf. and Conduct Standards III(A)(Question 6), *available at* http://www.eeoc.gov/facts/performance-conduct.html.  The origins of this statement are unclear. The only authority cited is an EEOC Technical Assistance Manual from 1992, which not only does not support this statement, but is contrary to its very premise:

- An employer can hold employees with disabilities to the same standards of production/performance as other similarly situated employees without disabilities for performing essential job functions (with or without reasonable accommodation).

- An employer also can hold employees with disabilities to the same standards of production/performance as other employees regarding marginal job functions, **unless the disability affects the ability to perform these marginal functions. If the ability to perform marginal functions is affected by the disability, the employer must provide some type of reasonable accommodation** such as job restructuring (unless to do so would be an undue hardship).

- A disabled employee who needs an accommodation (that is not an undue hardship for an employer) in order to perform a job function should not be evaluated on his/her ability to perform the function without the accommodation, and should not be downgraded because such an accommodation is needed to perform the function.

- An employer should not give employees with disabilities "special treatment." They should not be evaluated on a lower standard or disciplined less severely than any other employee. This is not equal employment opportunity.

- An employer must provide an employee with a disability with reasonable accommodation necessary to enable the employee to participate in the evaluation process (for example, counseling or an interpreter).

- If an employee with a disability is not performing well, an employer may require medical and other professional inquiries that are job-related and consistent with business necessity to discover whether the disability is causing the poor performance, and whether any reasonable accommodation or additional accommodation is needed. (See Chapter VI.)

- An employer may take the same disciplinary action against employees with disabilities as it takes against other similarly situated employees, if the illegal use of drugs or alcohol use affects job performance and/or attendance. (See Chapter VIII.)

- **An employer may not discipline or terminate an employee with a disability if the employer has refused to provide a requested reasonable accommodation that did not constitute an undue hardship, and the reason for unsatisfactory performance was the lack of accommodation**.

TAM at VII(7.7) (emphasis added), *available at* http://askjan.org/links/adatam1.html.  In fact, the Technical Assistance Manual expressly forbids terminating an employee whose unsatisfactory performance is caused by a lack of accommodation.  Id.  Furthermore, the examples cited in question 6 of the Performance and Conduct Standards do not support the position that termination need not be withheld when notice of a disability comes after notice of removal for performance problems is given.  Perf. and Conduct Standards III(A)(Question 6), *available at* http://www.eeoc.gov/facts/performance-conduct.html. Example 10 specifically states: "Odessa's delay in requesting an accommodation does not justify the employer's refusal to provide one.  If a reasonable accommodation will help improve the employee's performance (without posing an undue hardship), the accommodation must be provided."  Id.  This example is correctly premised on the portion of the Technical Assistance Manual emphasized above.  See TAM at VII(7.7), *available at* http://askjan.org/links/adatam1.html.  Thus, the ambiguity found in this portion of the EEOC's Performance and Conduct Standards cannot override all of the other laws, regulations, and Enforcement Guidance which reject this notion and, under Skidmore, it is entitled to no deference.

The Defendant also cites a series of Commission decisions which it claims hold that a request for reasonable accommodation comes too late when the employer has

31

already initiated action based on poor performance.  Doc. 7 at 15 (Def.'s Mot. Dismiss).

Three of the five cases relied upon by the Defendant are misconduct cases.  For example,

in Hailey v. U.S. Postal Service, EEOC Request No. 0520110439 (July 12, 2011), the

Commission's conclusion that the employee's request for an accommodation – submitted

after numerous violations of the agency's conduct standards – was too late was premised

exclusively on the EEOC's Enforcement Guidance on the Americans with Disabilities

Act and Psychiatric Disabilities, Question 36, which pertains solely to misconduct, not

performance.  Id. at *2.  Thus, the decision in Hailey is limited to misconduct and cannot

be extended to cases solely involving performance.

Hernandez v. Department of the Navy, EEOC Appeal No 01A41079 (Mar. 30,

2004) involved a probationary employee[7] who was terminated for misconduct.  As in

Hailey, the Commission relied upon Question 36 in the EEOC's Enforcement Guidance

on the Americans with Disabilities Act and Psychiatric Disabilities.  Ruiz v. National

Archives and Records Administration, EEOC Appeal No. 01A55070, *1 (Jan. 24, 2006)

also involved a probationary employee who was terminated for both misconduct and

performance issues.  There was no analysis in Ruiz; its conclusion that the

accommodation request was too late was predicated entirely on a citation to Hernandez.

Ruiz at *1.

Bell v. Department of Homeland Security, EEOC Request No. 0120071655 (May

28, 2009) and Smith v. Department of Labor, EEOC Request No. 01A50480 (February

_____

[7] An employee's probationary status is significant because probationary employees are
not usually entitled to the same due process protections as non-probationary employees.  5 C.F.R.
§ 315.804(a) (2008).  They are only entitled to notice of the termination, not to a proposal and an
opportunity to respond.  Id.  It is undisputed here that Ms. Von Drasek was not a probationary
employee.

28, 2006), both suggest that an agency is relieved of the requirement to provide an accommodation when a proposal to remove on performance grounds was issued before a reasonable accommodation request was submitted. Bell and Smith are both easily distinguishable from the instant matter because both involved probationary employees.[8] Moreover, there are additional reasons for according Bell and Smith no weight. Bell is completely devoid of any analysis supporting its singular statement that "the record indicates that complainant did not request an accommodation until after the issuance of the notice of termination." Bell at *2. Similarly, the Commission in Smith fails to provide any justification for its conclusion that it was too late to request accommodation after the employee had been notified of his termination. Smith at *5. Setting aside the impact the probationary status may have had on these decisions (without any analysis, it is impossible to ascertain the Commission's reasoning for extending the misconduct rules to performance cases), holding that a request for reasonable accommodation that comes after a proposal to remove for performance problems is too late is incorrect as a matter of law and thus, should be accorded no deference.

First, as noted, these decisions cite for this conclusion no supporting authority, federal regulations, or any other legitimate precedent. Second, they do not contain any legal reasoning to support this conclusion. Rather, they simply conclude, without analysis, that the employee was too late. As required by Skidmore, it is apparent that the lack of thorough consideration and reasoning undermines their validity.

Third, as set forth above, the plain language of the Rehabilitation Act and its implementing regulations firmly establish that an employer is required to accommodate a

---

[8] See footnote 7.

qualified disabled employee at any time while they are still an employee, including at the time they are proposed for removal. 29 C.F.R. § 1630.2 (1991). When a proposal is issued an agency has not determined to remove the employee, it has merely determined there may be grounds to remove the employee. Before issuing the decision on the proposal, the agency is required to consider the employee's written and oral replies and any medical documentation submitted by the employee. 5 U.S.C. § 4303 (1990); 5 C.F.R. § 432.105 (1993); see also Loudermill, 470 U.S. at 541. Thus, both statutory and regulatory language, which are entitled to far greater weight than Commission guidance and case law (especially case law with no analysis or support), contravene the Commission's conclusion that it is too late to request an accommodation if a removal has been proposed.

Fourth, in addition to the legal requirement that an agency take into consideration medical documentation and requests for reasonable accommodation submitted in response to a proposed removal on performance grounds, EEOC Guidance has repeatedly confirmed that a reasonable accommodation needed to correct performance problems can be requested at any time. Thus, the 2008 Performance and Conduct Standards and inexplicable Commission decisions are inconsistent with and contradicted by every other EEOC Guidance and the Technical Assistance Manual, which has been in effect since 1992, and carry no weight.

For all these reasons, Defendant's argument that it is exempted from complying with the Rehabilitation Act because Plaintiff requested a reasonable accommodation after receiving the proposal to remove fails as a matter of law, and the Defendant's Motion must be denied.

**D.    PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON CLAIMS 2 (DISCRIMINATION) AND 3 (RETALIATION) BECAUSE THERE IS DIRECT EVIDENCE THAT THE DEFENDANT'S TERMINATION OF MS. VON DRASEK WAS THE RESULT OF ILLEGAL ANIMUS.**

Defendant moves for summary judgment on Plaintiff's claim that the Defendant terminated her because of her disability and/or in retaliation for requesting a reasonable accommodation.  Doc. 7 at 17-18 (Def.'s Mot. Dismiss).  Defendant's argument is premised on its assertion that Plaintiff cannot establish pretext.  However, this is not a pretext analysis because there is direct evidence that the Defendant removed Ms. Von Drasek from federal service because of her disability and in retaliation for requesting a reasonable accommodation.  Because the undisputed facts, reflected in management's own statements, establish as a matter of law that the Defendant discriminated and retaliated against Plaintiff, summary judgment should be granted in favor of Plaintiff on claims 2 and 3.

Disparate treatment claims under the Rehabilitation Act are analyzed according to a three part, burden-shifting framework adopted by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  Aka, 156 F.3d at 1288.  However, when direct evidence of discriminatory or retaliatory bias is presented, the McDonnell-Douglas paradigm is inapplicable.  Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511 (2002) (citing Trans World Airlines v. Thurston, 469 U.S. 111 (1985)).  McDonnell Douglas is intended to establish a presumption of bias in the absence of direct evidence. Thurston, 469 U.S. at 121 ("The shifting burdens of proof set forth in McDonnell Douglas are designed to assure that the 'plaintiff [has] his day in court despite the unavailability of direct evidence.'") (quoting Loeb v. Textron, Inc., 600 F.2d 1003, 1014

(1st Cir. 1979)).  When direct evidence is introduced, the need for the order and allocation

of proof in circumstantial evidence cases no longer exists.  This is so because "[d]irect

evidence of discrimination is evidence that, if believed by the fact finder, proves the

particular fact in question *without any need for inference.* [Such evidence] includes any

statement or written document showing a discriminatory motive *on its face.*"  <u>Bowden v.</u>

<u>Clough</u>, 658 F. Supp. 2d 61, 87 n.19 (D.D.C. 2009) (quoting <u>Lemmons v. Georgetown</u>

<u>Univ. Hosp.</u>, 431 F. Supp. 2d 76, 86 (D.D.C. 2006) (internal quotation marks, citations,

and ellipsis omitted) (emphases in original)).

Here there is direct evidence that the Defendant terminated Ms. Von Drasek

because of her disability and request for accommodation.  Despite the fact that Ms.

Dietzel had ample evidence to the contrary, she asserted:  "[t]he bottom line is that Sue

can not [sic] perform the essential functions of the position of chemist or technician"

because she could not "think."  Ex. 16 at 3 (E-mails); Ex. 19 (E-mails).  Another

exchange between the HR Specialist, Mr. Gipson, and Ms. Dietzel reflects their animosity

toward Ms. Von Drasek and her disability:

> Mr. Gipson: "I don't think the Agency will be able to accommodate her.  Even if
> given more time to complete assignments, she still needs to be able to think."

> Ms. Dietzel: "Amen!  This is what I have been trying to convey; the area in which
> I think she is truly lacking, at least as it pertains to her current position."

Ex. 19 (E-mails).  Furthermore, Defendant's animus is demonstrated by its baseless

speculation that reassigning Ms. Von Drasek would simply result in another PIP or

accommodation request.  Ex. 19 at 1 (E-mails).  Such offensive stereotypical beliefs and

overt expressions of discriminatory animus, which serve as the basis for an employment

decision as they did here, should not be sanctioned.  <u>See</u> <u>Siefken v. Vill. of Arlington</u>

Heights, 65 F.3d 664, 666 (7th Cir. 1995) ("Congress enacted the ADA to 'level the playing field' for disabled people. Congress perceived that employers were basing employment decisions on unfounded stereotypes.").

These were not random exchanges.  Rather, they reflected the Defendant's overarching goal to prevent Ms. Von Drasek from being accommodated.  In response to Ms. Dietzel's plea to avoid accommodation, Defendant's counsel Jean Simonitsch provided advice.  Ex. 16 at 2 (E-mails).  Although Ms. Simonitsch's advice is redacted, Ms. Sledge-Gonzalez's response is indicative of her delight in not having to foist Ms. Von Drasek onto another supervisor: "Thank you! . . . .  So based on the [redacted] information below, it seems clear that they can take the action to remove [Ms. Von Drasek]." Id.

Ms. Dietzel then informed Ms. Anderson, the reasonable accommodation specialist, that she was going to remove Ms. Von Drasek.  Ex. 16 at 1 (E-mail).  Ms. Anderson reiterated the need to consider a reassignment for Ms. Von Drasek, but Ms. Dietzel dismissed this, concluding that Ms. Anderson was "required to go through the motions of accommodations." Id.  Ms. Dietzel stated: "What I am hearing is that I need to go full steam ahead and get the decision issued before Sandy [Anderson] does too much more work (for several reasons)." Id.

Importantly, Ms. Dietzel had already reached and drafted the decision to remove Ms. Von Drasek before she had received Ms. Von Drasek's written reply to the proposed removal and before she had received the Defendant's affirmative decision that Plaintiff was entitled to accommodation.  Ex. 18 at 2, 3 (E-mails).  Ms. Dietzel's email clearly indicates that she had already prepared the removal decision prior to receiving the written

reply, but added a few paragraphs, which she highlighted, after receiving the written

reply.  Id. at 2.  Plainly, as soon as Ms. Dietzel learned that Ms. Von Drasek needed an

accommodation, she determined to remove her from federal service irrespective of what

anyone, including Ms. Von Drasek, had to say.

      Even though Ms. Dietzel was receiving sound legal advice from the Reasonable

Accommodation Specialist, Ms. Dietzel refused to adhere to Ms. Anderson's expert

advice.  See Ex. 17 (Anderson letter to Dietzel); Ex. 23 (Dietzel's notes).  When Ms.

Anderson informed Ms. Dietzel that a reassignment would need to be offered based on

Ms. Dietzel's conclusions that Ms. Von Drasek could not be accommodated in her

position of record, Ms. Dietzel's response was telling: "Still, she does not get it."  Ex. 16

at 4-5 (E-mails).

      Ms. Dietzel also was advised by Sheryl Sledge-Gonzalez, who appears to be a

Human Resources or Employee Relations employee, that a reassignment was the next

step in the process, and "a way of getting [Ms. Von Drasek] away from you in Kansas."

Ex. 16 at 3 (E-mails).  Ms. Sledge-Gonzalez further explained that if Ms. Von Drasek

was eligible for reassignment and a GS-11 chemist position was available, Ms. Von

Drasek would automatically be placed in the position.  Id.  "If she does not perform there,

they will get rid of her."  Id.  Ms. Sledge-Gonzalez explained that a questionnaire would

be provided to Ms. Von Drasek to determine whether she was willing to be reassigned

and/or demoted, and which addressed other issues related to reassignment.  Id.  No such

questionnaire was ever provided to Ms. Von Drasek nor did anyone from the Defendant

contact her to discuss these issues. Ex. 3 ¶¶ 13-14 (Von Drasek Aff.); Ex. 12 at 4-5

(Def.'s Resp. Interrogs. 7, 8).  Ms. Sledge-Gonzalez also encouraged Ms. Dietzel to

ensure Ms. Von Drasek was not provided a reassignment in Ms. Dietzel's lab.  Ex. 16. at

3 (E-Mails).  Finally, Ms. Adams, Ms. Dietzel's supervisor, commented that she hoped

the new supervisor would be fully apprised of the reasons for Ms. Von Drasek's

reassignment, and Ms. Sledge-Gonzalez reassured her that would likely happen and that

Ms. Adams was free to "tell them the truth."  Id.  It is plain that management had a

discriminatory animus against Ms. Von Drasek because she could not "think" and was

determined not to accommodate her because she was disabled.  This mentality is

particularly outrageous given the prior success exhibited by Ms. Von Drasek as a Chemist

for USDA and her doctor's statement that she could be successful with accommodation.

The Defendant's decision to remove Ms. Von Drasek was based on her disability

and request for reasonable accommodation.  The false assumptions, the comments

reflecting a stereotypical view of Ms. Von Drasek's disability, and the deciding officials'

outright hostile statements reflect the Defendant's deep-seated discriminatory animus,

which came to light the moment Ms. Von Drasek requested accommodation.

Management rejected the Defendant's policies and expert advice in compliance therewith

to pursue a course of removal because it did not want to deal with Ms. Von Drasek's

disability.  This is a clear violation of the Rehabilitation Act for which the Defendant is

liable and, therefore, summary judgment in favor of Plaintiff should be rendered.

## IV.    CONCLUSION

The Defendant failed to comply with the Rehabilitation Act when it removed Ms.

Von Drasek from federal service rather than accommodate her.  The Defendant did not

engage in the interactive process, did not propose any alternate accommodations, did not

conduct a proper job search, did not reassign Ms. Von Drasek, did not make a good faith

effort to reasonably accommodate Ms. Von Drasek, and cannot establish that accommodating Ms. Von Drasek would have been an undue hardship.  In addition, there is direct evidence that the Defendant's removal of Ms. Von Drasek was based on her disability and request for reasonable accommodation, which are also violations of the Rehabilitation Act.  Accordingly, and for the foregoing reasons, Plaintiff is entitled to summary judgment on all her claims, while the Defendant's Motion must be denied.

Respectfully submitted,

_/s/_____
Elaine L. Fitch
DC Bar No. 471240
Kalijarvi, Chuzi, Newman & Fitch, P.C.
1901 L Street, N.W., Suite 610
Washington, D.C. 20036
Tel:  (202) 331-9260
Fax: (866) 452-5789
efitch@kcnlaw.com
Attorney for Plaintiff