# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

<table>
<tr><td>

SUSAN VON DRASEK,

     Plaintiff,

     v.

SYLVIA BURWELL,

     Defendant.
</td><td>
)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)
</td><td>
Civil Action No. 13-cv-0847 (KBJ)
</td></tr>
</table>

## MEMORANDUM OPINION AND ORDER

The United States Food and Drug Administration ("FDA") fired Plaintiff Susan Von Drasek from her job as an FDA chemist, after repeated warnings about her unsatisfactory performance.  Von Drasek has bipolar disorder, and she has brought the instant action against the FDA under the Rehabilitation Act of 1973, 29 U.S.C. §§ 791–794f, claiming that her discharge violates that statute.  Von Drasek's complaint makes three specific claims: (1) that the FDA failed to accommodate her disability; (2) that the FDA intentionally discriminated against her by terminating her employment because of her disability; and (3) that the FDA discharged her in retaliation for her request for accommodations.

Before this Court at present are the FDA's motion to dismiss, or in the alternative, motion for summary judgment (Mot. to Dismiss or, in the Alternative, for Summ. J. ("Def.'s Mot."), ECF No. 7), and Von Drasek's cross-motion for summary

judgment (Pl.'s Cross-Mot. for Summ. J. ("Pl.'s Mot."), ECF No. 10).[1] The FDA

argues that Von Drasek did not timely inform the agency of her need for any

accommodations, and that, in any event, she has not established a prima facie case to

support her failure-to-accommodate claim. (*See* Mem. in Supp. of Def.'s Mot. ("Def.'s

Mem."), ECF No. 7, at 14-17.)[2] Moreover, the FDA argues that Von Drasek has failed

to raise any genuine issue of fact regarding the intentional discrimination and

retaliation claims, because the evidence demonstrates that her termination was the result

of non-discriminatory and non-retaliatory factors. (*Id.* at 17-18.) For her part, Von

Drasek argues that she is entitled to summary judgment on the failure-to-accommodate

claim because her request for accommodations was timely and it is undisputed that the

FDA failed to reassign her as requested, in violation of its obligations under the

Rehabilitation Act. (*See* Pl.'s Opp'n to Def.'s Mot. & in Supp. of Pl.'s Mot. ("Pl.'s

Mem."), ECF No. 10-1, at 10-11, 21-22.) Von Drasek also argues that she is entitled to

summary judgment on her intentional discrimination and retaliation claims because she

has direct evidence of the FDA's discriminatory and retaliatory animus. (*Id.* at 35-39.)

        As explained fully below, this Court finds that Von Drasek's request for

accommodations was quite late, and perhaps irresponsibly so, but was timely

nevertheless because the FDA had not yet terminated Von Drasek's employment when

it received her request, and thus the agency was still in a position to respond to it.

However, because genuine issues of material fact remain regarding whether or not Von

---

[1] The FDA is a sub-agency of the United States Department of Health and Human Services ("HHS"), and Von Drasek initially properly filed this action against former HHS Secretary Kathleen Sebelius, in her official capacity. Current HHS Secretary Sylvia Burwell has been substituted as the defendant pursuant to Federal Rule of Civil Procedure 25(d); hereinafter, the Court will refer to the FDA, and not Secretary Burwell, as "Defendant."

[2] Page numbers throughout refer to the numbers that the Court's electronic filing system assigned.

Drasek could have performed the essential functions of her job if she was reassigned as requested, entry of summary judgment in either party's favor is unwarranted.  With respect to Von Drasek's intentional discrimination and retaliation claims, this Court will enter judgment in favor of the FDA because the Rehabilitation Act requires that the alleged discrimination or retaliation be the *sole* reason for the adverse employment action, and given the record here, no reasonable jury could conclude that animus regarding Von Drasek's request for accommodation and/or her underlying disability were the but-for cause of her final removal.

Accordingly, and for the reasons that follow, the FDA's motion to dismiss, or in the alternative, motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**, and Von Drasek's cross-motion for summary judgment is **DENIED**.

## I.      BACKGROUND

### A.      Facts

The underlying facts of this case are largely undisputed.  In 1978, Von Drasek was diagnosed with a type of bipolar disorder that produces symptoms such as depression and anxiety, and that "substantially limits major life activities, including sleeping, thinking and concentrating, processing information, impulse control, [and] cognitive abilities[.]"  (Compl., ECF No. 1, ¶¶ 21–22; *see also* Pl.'s Ex. 4, Pl.'s Request for Reasonable Accommodation ("Pl.'s Reas. Acc. Req."), ECF No. 10-6, at 4.)[3] Despite this diagnosis, Von Drasek apparently has enjoyed a lengthy and seemingly generally successful career as a chemist.  The complaint extolls Von Drasek's

---

[3]  The exhibits that are attached to Plaintiff's Cross-Motion for Summary Judgment and Defendant's Motion for Summary Judgment are referred to herein as "Pl.'s Ex. __" or "Def.'s Ex. __," respectively.

accomplishments in the field, including a graduate degree in geochemistry, six publications, and awards and commendations for her performance.  (Compl. ¶ 15; *see also* Pl.'s Ex. 1, Pl.'s Resume ("Resume"), ECF No. 10-3, at 5-10.)  Furthermore, before joining the FDA, Von Drasek worked for eight years at the United States Department of Agriculture ("USDA"), where she consistently received "Fully Successful" performance ratings.  (Compl. ¶ 18.)  According to Von Drasek, she left her post at the USDA only because the particular chemist position that she held was capped at a lower salary and performance level, meaning there was no room for promotion. (Compl. ¶ 19; *see also* Pl.'s Ex. 3, Aff. of Susan Von Drasek ("Van Drasek Aff."), ECF No. 10-5, ¶ 2.)

Von Drasek began working as a chemist for the FDA on April 13, 2008.  (Compl. ¶ 20; Def.'s Stmt. of Undisputed Material Facts ("Def.'s Facts"), ECF No. 7, ¶ 1.) Significantly, Von Drasek did not inform anyone at the FDA of her bipolar condition diagnosis, nor did she request any accommodations at the time she began her tenure at FDA.  (*See* Def.'s Facts ¶ 4.)  By August of 2009, Von Drasek began having difficulty at work, and as a result, she sought private medical attention. (Pl.'s Reas. Acc. Req. at 4.)  Once again, Von Drasek did not share with anyone at the FDA that she sought and was receiving medical attention for her previously diagnosed bipolar condition.  (*See* Def.'s Facts ¶ 4.)

        1.   <u>The Performance Improvement Plan</u>

On April 1, 2010, Von Drasek's immediate supervisor, Rachel Dietzel, issued a Performance Improvement Plan ("PIP") (*id*. ¶ 23), which is a document that advised Von Drasek that her on-the-job performance was unacceptable and that she had 75 days

to improve her work. (*See* Def.'s Ex. 1, Performance Improvement Plan ("PIP"), ECF No. 7-1, at 2.)  The PIP stated that Von Drasek's performance had failed to meet minimally acceptable levels in two respects.  First, according to the PIP, Von Drasek had failed to demonstrate technical knowledge and competency in her field throughout 2009 "because the technical quality of [her] work product [was] significantly lacking despite the amount of time [she] devoted to using instrumentation[,]" and she "lack[ed] the more advanced comprehension of what" she was doing.  (*Id.* at 2–3.)  Second, the PIP stated that Von Drasek failed in "program and project management and performance[,]" given the "repeated deficiencies" in her analyses.  (*Id.* at 3.)  The PIP highlighted that Von Drasek "either [did] not seek guidance, or [was] not capable of recognizing when [she] need[ed] assistance" (*id.*), and that she "repeatedly failed to meet deadlines" (*id.*).  The PIP also described what Von Drasek needed to do in order to bring her performance up to the "minimally successful" threshold, gave her 75 days to improve, and specifically warned her that failure to improve could lead to demotion or removal.  (*Id.* at 6.)

On September 29, 2010—more than 180 days after she received the PIP document—Von Drasek contacted her treating physician, Dr. Jayashree Coca, M.D., M.P.H., and asked her to fill out a Family Medical Leave Act ("FMLA") form.  (Compl. ¶ 24.)  Dr. Coca completed the form as requested, identifying Von Drasek's bipolar diagnosis.  (*Id.* ¶¶ 24 -25; *see also* Pl.'s Ex. 5, ECF No. 10-7, at 1.)  However, Von Drasek did not give the FMLA form to Dietzel or to anyone else at the FDA before Dietzel once again contacted Von Drasek regarding her poor performance.

2.     Proposed Removal And Request for Accommodation

This next contact took place on October 1, 2010, exactly six months after the PIP issued.  Dietzel informed Von Drasek that her performance still had not improved and that Dietzel was proposing her removal.  (Compl. ¶ 25; *see also* Def.'s Ex. 2, Proposal to Remove ("Prop. to Remove"), ECF No. 7-1, at 8-14.)  Four days later, on October 5, 2010, Von Drasek notified Dietzel that she had a disability; that she was in the process of getting her FMLA paperwork together; and that she was requesting accommodations.  (Compl. ¶ 26; Def.'s Ex. 3, ECF No. 7-1, at 16.)  This was the first time that Von Drasek had disclosed the fact of her disability to anyone at the FDA, and it was her first request for accommodation.  Von Drasek followed up on October 8, 2010, by submitting the FMLA paperwork that Dr. Coca had completed.  (Compl. ¶ 27.)  Then, on October 13, 2010, Von Drasek wrote to both Dietzel and the FDA's Labor and Employee Relations Specialist—through counsel—"to address issues involving the proposed removal and to reiterate Plaintiff's request for accommodation."  (*Id*. ¶ 28; *see also* Pl.'s Ex. 7, ECF No. 10-9, at 1-2 (letter from counsel requesting an extension of time to respond to the proposed removal because Von Drasek was waiting for additional information from Dr. Coca).)

Over the next few weeks, Von Drasek's attorney contacted the FDA's reasonable accommodations specialist to ascertain the agency's process for requesting accommodations.  (Compl. ¶ 29).  Thereafter, on November 4, 2010, Von Drasek submitted a formal, written request for accommodation, which included a letter from Dr. Coca detailing the symptoms of Von Drasek's disability and its effect on her job

performance.  (Compl. ¶ 29; *see also* Pl.'s Reas. Acc. Req. at 4-5.)  Specifically,  Dr.

Coca explained that

> Von Drasek came to see me because she was having difficulties
> at work.  Because of [her] bipolar disorder, she can become easily
> overwhelmed and confused.  When she feels overwhelmed, her
> anxiety is heightened, and she can face difficulty processing
> information.  This can lead to mistakes being made and an
> inability to follow through or to request assistance.  For example,
> when Ms. Von Drasek is in a heightened state of anxiety, it can
> be  exceedingly  difficult  for  her  to  hear  and  understand
> instructions,  to  remember  instructions,  to  comprehend
> instructions, and to follow instructions.  This makes it extremely
> difficult for [her] to meet tight deadlines.  If she is anxious and
> rushing, she may not take the time to obtain information she
> needs to successfully complete the assignment.  It can also cause
> her to fear and avoid interacting with others.  In short, . . . Von
> Drasek's bipolar disorder, if not accommodated, can interfere
> with every aspect of her performance.

(Pl.'s Reas. Acc. Req. at 4–5.)  Dr. Coca's letter also recommended three specific

accommodations:  (1) written instructions for assignments; (2) additional time to

complete tasks; and (3) reassignment to a different position.  (*Id.* at 5; *see also* Compl.

¶ 30.)  A few days after she submitted Dr. Coca's letter, Von Drasek provided the FDA

with a signed medical release allowing agency representatives to speak with Dr. Coca

and to obtain copies of Von Drasek's medical records.  (Compl. ¶ 31; *see also* Def.'s

Ex. 5, ECF No. 7-1, at 32.)

The following month, on December 23, 2010, Von Drasek submitted a formal

written response to her proposed removal.  (Compl. ¶ 35; *see also* Pl.'s Ex. 2, Pl.'s

Written Reply to Proposal to Remove ("Pl.'s Reply to Prop. to Remove"), ECF No. 10-

4.)  In the response, Von Drasek reiterated that she has a disability and had requested

accommodations, and she explained the requirements of the Rehabilitation Act, as she

understood them.  (*See* Compl. ¶ 35; Pl.'s Reply to Prop. to Remove at 2–5.)  Von

Drasek's response also sought to explain why her current work environment was causing her anxiety, thereby exacerbating her symptoms. (Pl.'s Reply to Prop. to Remove at 2.) According to Von Drasek, another chemist in her workgroup, Susan Nichols, had created an "intimidating and dismaying" environment, particularly when Nichols "yell[ed] and curse[d]" at Von Drasek, "respond[ed] in a very sarcastic fashion" to Von Drasek's questions, and provided "unwarranted criticism" of Von Drasek's work. (*Id.*) Von Drasek stated that both she and others had complained about Nichols' behavior to agency officials, but that no one at the FDA ever took action. (*Id.*) The written response also maintained that Von Drasek's treating physician had concluded that Nichols's "destructive behavior" had "exacerbated" Von Drasek's disability to such an extent that accommodations were required. (*Id.*)

3.      The FDA's Treatment Of Von Drasek's Request For Accommodation

After Von Drasek submitted her request for accommodation, there was a great deal of back-and-forth among agency employees about the issue. Saundra Anderson— the FDA's reasonable accommodations specialist—informed Dietzel that, as the decision maker on Von Drasek's accommodation request, Dietzel had an obligation to notify Von Drasek of the agency's eventual decision and a duty to engage in an interactive dialogue with Von Drasek regarding the requested accommodations. (Compl. ¶ 32; *see also* Pl.'s Ex. 16, FDA Employee Emails, ECF No. 10-18, at 1–2.) In response, Dietzel expressed hesitation, suggesting that the FDA need not accommodate Von Drasek because Dietzel had proposed her removal before the agency was even aware of her disability and before the accommodation request was made. (*See* Pl.'s Ex. 11, ECF No. 10-13, at 1 (statement by Dietzel in an email to Anderson that "[t]he

employee cannot raise a medical condition after management has proposed the
employee's removal").)  Anderson responded to Dietzel by explaining that an employee
can request accommodations at any time, and that the agency must respond.  (*See id.*;
*see also* Compl. ¶ 32.)

The FDA also assigned an agency physician, Dr. Lawrence P. Saladino, to Von
Drasek's case.  Dr. Saladino reviewed Von Drasek's medical documentation, and at one
point, even requested that Dr. Coca complete a supplemental form regarding Von
Drasek's medical condition.  (Compl. ¶ 33.)  Dr. Saladino provided Anderson with his
final assessment of Von Drasek's circumstances on December 27, 2010.  (Def.'s Ex. 6,
ECF No. 7-1, at 34–36.)  Dr. Saladino agreed that written instructions and extra time
were appropriate accommodations given Von Drasek's difficulty thinking,
concentrating, interacting with others, working, and sleeping.  (*Id.* at 35.)  However, Dr.
Saladino did not recommend reassignment to a different position within the agency,
stating that he found Dr. Coca's information to be "vague and nonspecific, and does not
clearly explain the medical benefit to be obtained from this request; therefore, it is not
possible to recommend granting such a request at this time."  (*Id.*)  Neither Dr. Saladino
nor Dietzel reached out to Von Drasek or Dr. Coca to seek additional information about
the reassignment request.  (Compl. ¶ 36; *see also* Pl.'s Mot. at 7-8; Pl.'s Ex. 12,
Agency's Reply to Appellant's First Set of Discovery Requests, ECF No. 10-14, at 4–
6.)

According to the complaint, Dr. Saladino's report was forwarded to Dietzel on
January 14, 2011, along with a statement from Anderson reiterating that the agency was
required to provide Von Drasek with a response to her accommodation request, and

noting that the agency had 15 days to do so.  (Compl. ¶ 37.)  However, Dietzel failed to meet that deadline.  (*Id*.)  Instead, some 75 days later, Dietzel informed Anderson that she could not accommodate Von Drasek in her office (*id*. ¶ 38), and when Anderson suggested that reassignment should be offered to Von Drasek, Dietzel allegedly made a disparaging remark to two other FDA employees about how Anderson didn't "get it[.]" (*Id*. ¶ 39.)  In addition, when Anderson and others in the FDA's human resources department told Dietzel that reassignment paperwork for Von Drasek was being processed, Dietzel wrote emails to other FDA employees making such comments as, "'[w]hat I am hearing is that I need to go full steam ahead and get the [removal] decision issued before [Anderson] does too much more work'" and "'I guess I can't prevent [Anderson] from reassigning [Von Drasek], unless I of course remove her first. But do I HAVE to allow [] the EEO to attempt to reassign her?'"  (*Id.* ¶ 42.)  In another email correspondence regarding Dietzel's plan to terminate Von Drasek, an employee expressed his belief that the FDA would not be able to accommodate Van Drasek because, "[e]ven if given more time to complete assignments, she still needs to be able to think," to which Dietzel responded, "'Amen!  That is what I have been trying to convey; the area in which I think she is truly lacking, at least as it pertains to her current position.'"  (*Id.* ¶ 43.)

On April 18, 2011, Dietzel formally denied Von Drasek's request for accommodation.  (Pl.'s Ex. 10, Reasonable Accommodation Request Denial ("Reas. Acc. Req. Denial"), ECF No. 10-12, at 2.)  Dietzel noted that the agency had already provided Von Drasek with written instructions and extra time to complete assignments during the PIP period, and that Von Drasek's performance still did not improve.  (*See*

*id.* ("Despite these accommodations, you were unable to perform the essential functions of your job at an acceptable level.").)  Dietzel also stated that "there [was] no position in the office/Division to which [Von Drasek could] be reassigned[.]"  (*Id.*)[4]  Thus, on April 20, 2011, Von Drasek was discharged from federal service, effective April 22, 2011.  (Def.'s Ex. 8, Removal Decision, ECF No. 7-1, at 40.)

## B.    Procedural History

According to the complaint, on April 26, 2011, four days after the termination became effective, Von Drasek appealed her removal to the U.S. Merit Systems Protection Board ("MSPB"), alleging that her removal violated the Rehabilitation Act. (Compl. ¶ 8.)  The MSPB affirmed the removal on December 6, 2011.  (*Id.* ¶ 10.)  Von Drasek appealed the MSPB's decision to the U.S. Equal Employment Opportunity Commission ("EEOC") on February 9, 2012 (*id.* ¶ 11), and on May 9, 2013, Von Drasek received the EEOC's Denial of Consideration of her petition.  (*Id.* ¶ 12).

Von Drasek filed the complaint in the instant case on June 6, 2013.  The three-count complaint alleges that the FDA failed to provide reasonable accommodations for Von Drasek's disability (Count I) (Compl. ¶¶ 53–57); that the agency intentionally discriminated against her on account of her disability (Count II) (*id.* ¶¶ 58–60); and that she was removed from her position in retaliation for exercising her rights under the Rehabilitation Act (Count III) (*id.* ¶¶ 61–63).  The FDA filed a motion to dismiss, or in the alternative, motion for summary judgment, on August 9, 2013.  Von Drasek filed a

---

[4]  According to the complaint, at the time that Dietzel made this statement, "[t]he FDA was advertising 'many vacancies' for a GS-1320-7/9/11 chemist in Bothell, WA and seven vacancies for a GS-1320-9/11/12 chemist in Jefferson, Arkansas."  (Compl. ¶ 45.)

cross-motion on September 23, 2013.  This Court held a hearing on both motions on February 20, 2014.

## II.    LEGAL FRAMEWORK

A threshold issue in this case is which rule of procedure—Federal Rule of Civil Procedure 12(b)(6) or 56—applies to the instant motions.  The FDA has titled its filing a "motion to dismiss, or in the alternative, motion for summary judgment[,]" and the agency cites to Rule 12(b)(6), suggesting that the "failure to state a claim" standard is the basis for the motion.  (*See* Def.'s Mot. at 1; Def.'s Mem. at 8 (explaining the standard on Rule 12(b)(6) motions).)  However, as Von Drasek points out, "nowhere in the *body* of its brief [does the FDA] argue that the Complaint failed to state a claim for relief." (Pl.'s Mem. at 2 (emphasis supplied).)  Furthermore, in opposing the FDA's motion, Von Drasek relies on materials that are not referenced in her complaint.  (*See, e.g.*, Pl.'s Mem. at 16-17 (citing Von Drasek Aff.; Pl.'s Ex. 15, FDA Reasonable Accommodation Policy, ECF No. 10-17).)  Accordingly, the Court will grant the FDA's "alternative" request that its motion be treated as one for summary judgment under Rule 56.  *See Cox v. Graphic Commc'ns Conference of Int'l Bhd. of Teamsters*, 603 F. Supp. 2d 23, 24 (D.D.C. 2009) (construing a motion to dismiss, or in the alternative, for summary judgment as a motion for summary judgment where "[b]oth parties have attached to their filings various declarations and exhibits outside the scope of the Complaint and have submitted statements of material fact pursuant to Local Civil Rule 7(h)(1)").

## A.      Summary Judgment Standard Under Rule 56

Federal Rule of Civil Procedure 56 makes clear that summary judgment is appropriate only if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The Court's role in deciding a summary judgment motion is not to "determine the truth of the matter, but instead [to] decide only whether there is a genuine issue [of material fact] for trial." *Barnett v. PA Consulting Grp., Inc.*, 715 F.3d 354, 358 (D.C. Cir. 2013) (citation omitted).  "A fact is material if it 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Steele v. Schafer*, 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

In determining whether or not there is a genuine dispute about material facts, the court must view the evidence in the light most favorable to the non-moving party and must draw all reasonable inferences in that party's favor. *See, e.g., Grosdidier v. Broad. Bd. Of Governors, Chairman*, 709 F.3d 19, 23 (D.C. Cir. 2013) (quotation marks and citation omitted).  The moving party may successfully support its motion by identifying those portions of the record that it believes demonstrate the absence of a genuine dispute of material fact.  Fed. R. Civ. P. 56(c)(1)(A).  And in opposition, the non-moving party must show that there is a genuine dispute of fact based on more than "[t]he mere existence of a scintilla of evidence"; indeed, the evidence must be such that "the jury could reasonably find for" the non-moving party.  *Anderson*, 477 U.S. at 252. Moreover, the non-moving party "may not rest upon [the] mere allegations or denials of

his pleading but must present affirmative evidence showing a genuine issue for trial." *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987) (internal quotation marks and citation omitted).

Importantly, in determining whether there are genuine issues of material fact for trial in a case that involves allegations of employment discrimination, the Court must proceed with caution, and must apply a slightly "heightened standard" that reflects this hesitation. *See Walker v. England*, 590 F. Supp. 2d 113, 132–33 (D.D.C. 2008) (explaining that the prospect of granting summary judgment "must be approached with specific caution in discrimination cases"); *see also McCoy v. WGN Cont'l Broad. Co.*, 957 F.2d 368, 370–71 (7th Cir. 1992) (noting that the "general standard [for summary judgment] is applied with added rigor in employment discrimination cases"). But the plaintiff in such cases "is not [thereby] relieved of his obligation to support his allegations by . . . competent evidence showing that there is a genuine issue for trial." *Walker*, 590 F. Supp. 2d at 132 (internal quotation marks and citation omitted); *see also Marshall v. James*, 276 F. Supp. 2d 41, 47 (D.D.C. 2003) (noting that summary judgment is still granted in discrimination cases, despite the courts' cautious approach (*abrogated on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002)).

Finally, it is important to note "[t]he rule governing cross-motions for summary judgment[,]" which is that "neither party waives the right to a full trial on the merits by filing its own motion; each side concedes that no material facts are at issue only for the purposes of its own motion." *Sherwood v. Wash. Post*, 871 F.2d 1144, 1147 n.4 (D.C. Cir. 1989) (internal quotation marks and citation omitted). Furthermore, "[i]n assessing

each party's motion, '[a]ll underlying facts and inferences are analyzed in the light

most favorable to the non-moving party.'" *Vaughan v. Amtrak*, 892 F. Supp. 2d 84, 91–

92 (D.D.C. 2012) (alteration in original) (quoting *N.S. ex rel. Stein v. District of

Columbia*, 709 F. Supp. 2d 57, 65 (D.D.C. 2010)).

### B.      The Rehabilitation Act

The Rehabilitation Act of 1973 provides in relevant part that "[n]o otherwise

qualified individual with a disability" may "be subjected to discrimination" by any

federal agency "solely by reason of her or his disability[.]"  29 U.S.C. § 794(a).  The

Rehabilitation Act applies to *federal* executive agencies, and to any other program that

receives *federal* funding—by contrast, state and local government programs, including

those that do not receive federal funding, are governed by the Americans with

Disabilities Act ("ADA").  *Compare* 29 U.S.C. § 794(a), *with* 42 U.S.C. § 12112.

Consequently, because Von Drasek is challenging the actions of the FDA—a federal

agency in the Executive Branch—she has filed this action under the Rehabilitation Act

and not the ADA.  Notably, however, the Rehabilitation Act and the ADA are similar in

nature and share a common purpose:  "to prevent old-fashioned and unfounded

prejudices against disabled persons from interfering with those individuals' rights to

enjoy the same privileges and duties afforded to all United States citizens." *Galloway*

*v. Super. Ct. of D.C.*, 816 F. Supp. 12, 20 (D.D.C. 1993).

Although the Rehabilitation Act does not specifically delineate the particular

types of discrimination that the statute prohibits, it does state that where, as here, an

employment discrimination lawsuit is filed under Section 794 of the Rehabilitation Act,

the applicable legal standards "shall be the standards applied under" the analogous

discrimination provisions of the ADA.  *See* 29 U.S.C. § 794(d); *see also Schmidt v. Solis*, 891 F. Supp. 2d 72, 86–87 (D.D.C. 2012) (noting that, under the Rehabilitation Act, "substantive rights are defined by reference to the ADA, as well as the [EEOC's] regulations and enforcement guidance that implement the ADA").  Accordingly, in order to claim protection under the Rehabilitation Act (or the ADA), a plaintiff must be a "qualified individual with a disability[.]"  29 U.S.C. § 794(a); *see also* 42 U.S.C. § 12112(a).  This means that the person must have a "disability"—*i.e.,* "a physical or mental impairment that substantially limits one or more major life activities of such individual" 42 U.S.C. § 12102(1)(A)—and must also be a person "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  *Id.* § 12111(8).  Furthermore, the Rehabilitation Act (like the ADA) bars several different types of discrimination:  failure to accommodate, *see, e.g.*, *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1288 (D.C. Cir. 1998) (en banc); intentional discrimination, also known as "disparate treatment" discrimination, *see, e.g.*, *Doak v. Johnson*, 19 F. Supp. 3d 259, 271 (D.D.C. 2014); retaliation, *see, e.g.*, *Smith v. District of Columbia*, 430 F.3d 450, 455 (D.C. Cir. 2005); disparate impact discrimination, *see, e.g.*, *Raytheon Co. v. Hernandez*, 540 U.S. 44, 53 (2003); and the creation of a hostile work environment, *see, e.g.*, *Floyd v. Lee*, 968 F. Supp. 2d 308, 328–29 (D.D.C. 2013).

Significantly for present purposes, despite the similarities between the Rehabilitation Act and the ADA, there is an established exception to the application of the ADA's legal standards to a claim brought under the Rehabilitation Act:  the plain language of the Rehabilitation Act imposes a stricter causation standard than the ADA.

*See Alston v. District of Columbia*, 770 F. Supp. 2d 289, 298 (D.D.C. 2011).  That is, while the ADA prohibits discrimination against an employee "on the basis of disability[,]" 42 U.S.C.A. § 12112, the Rehabilitation Act prohibits discrimination against an employee "*solely by reason of her or his disability*[.]" 29 U.S.C. § 794(a) (emphasis added).  Thus, a discrimination or retaliation claim brought under the ADA can rest on a "motivating factor" causation analysis—meaning that the claim can be sustained if discriminatory animus is merely one of several factors that precipitated the adverse employment action, *see Alston*, 770 F. Supp. 2d at 297; *see also Pinkerton v. Spellings*, 529 F.3d 513, 519 (5th Cir. 2008) ("The proper causation standard under the ADA is a 'motivating factor' test."); *Head v. Glacier N.W. Inc.*, 413 F.3d 1053, 1065 (9th Cir. 2005) ("[T]he ADA plaintiff need not show more than that impermissible motives were a 'motivating factor' in any adverse action.")—but courts have come to a different conclusion with respect to the Rehabilitation Act.  For Rehabilitation Act claims, courts have found that the presence of the word "solely" means that the causation element of intentional discrimination and retaliation claims brought under that Act cannot be satisfied by a motivating factor test; rather, the applicable analysis is the traditional "but-for" causation standard.  *See Gard v. U.S. Dep't of Educ.*, 752 F. Supp. 2d 30, 35–36 (D.D.C. 2010) (applying but-for causation to a Rehabilitation Act retaliation claim), *aff'd*, No. 11-5020, 2011 WL 2148585 (D.C. Cir. May 25, 2011); *see also McNely v. Ocala Star-Banner Corp.*, 99 F.3d 1068, 1073–74 (11th Cir. 1996) (rejecting but-for causation under ADA because, unlike the Rehabilitation Act, it lacked the word "solely").

Notably, under the "but-for" causation standard, a claim cannot succeed unless the protected trait—here, disability—"was the 'reason' that the employer decided to act." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009) (explaining but-for causation in the context of the Age Discrimination in Employment Act of 1967 (citing *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993)); *see also Palmquist v. Shinseki*, 689 F.3d 66, 72 (1st Cir. 2012) (holding that but-for causation prevents a Rehabilitation Act claim where an employer "prove[s] that it would have made the same employment decision in the absence of the forbidden factor"); *Gard*, 752 F. Supp. 2d at 36 (noting that, to survive motion for summary judgment on Rehabilitation Act retaliation claim, plaintiff "must present facts from which a reasonable jury could conclude that 'but for' his [prior protected activity], Defendants would not have made it more difficult to obtain a reasonable accommodation").

## III.    ANALYSIS

As explained, Von Drasek makes three claims in this action: first, that the FDA is liable for failing to accommodate her disability (*see* Compl. ¶¶ 53–57); second, that the FDA intentionally discriminated against her because of her disability when it terminated her employment (*id.* ¶¶ 58–60); and third, that the FDA terminated her employment in retaliation for her request for a reasonable accommodation (*id.* ¶¶ 61–63).  In response to the failure-to-accommodate claim, the FDA argues both that Von Drasek's request for a reasonable accommodation was untimely and that, regardless, she has not established a prima facie case for the agency's unlawful failure to accommodate her.  (Def.'s Mem. at 14-17.)  With respect the intentional discrimination and retaliation claims, the FDA argues that the agency has unrefuted, legitimate, non-discriminatory,

and non-retaliatory reasons for Von Drasek's termination.  (*Id.* at 17-18.)  Moreover, both parties are adamant that they are entitled to judgment as a matter of law on the facts presented; consequently, cross-motions for summary judgment are pending with respect to each of Von Drasek's claims.

For the reasons explained below, this Court concludes that, although Von Drasek's request for accommodations was timely, neither party is entitled to summary judgment on her failure-to-accommodate claim because a genuine dispute of fact exists regarding the material issue of whether Von Drasek could have performed adequately if she had been reassigned to a chemist position in a different working group, as she requested.  This Court further concludes that the Defendant is entitled to summary judgment on Von Drasek's intentional discrimination and retaliation claims because, on the record presented here, no reasonable jury could find that Von Drasek's termination was solely due to animus toward Von Drasek's disability, or solely in retaliation for her request for accommodations, as the Rehabilitation Act requires.

### A.     There Are Genuine Issues Of Material Fact With Respect To Von Drasek's Failure-to-Accommodate Claim

To recap what was explained above, the Rehabilitation Act protects disabled employees who can perform the essential functions of their jobs with "reasonable accommodation."  42 U.S.C. § 12112(a)-(b).  The failure of an employer to provide a reasonable accommodation for an employee's disability is, essentially, a strict liability violation, because refusal to provide a reasonable accommodation when one is requested violates the Rehabilitation Act regardless of whether the employer harbors animus or otherwise intends to discriminate against the employee.  *See Schmidt*, 891 F. Supp. 2d at 87 ("[I]t is *not* appropriate to require proof of intent when the claim is that

the employer failed to provide a reasonable accommodation." (emphasis added) (internal quotation marks and citation omitted)).  Thus, to establish a failure-to-accommodate disability discrimination claim, a plaintiff must show only:

> (1) that [s]he was an individual with a disability within the meaning of the statute; (2) that the employer had notice of [her] disability; (3) that with reasonable accommodation [s]he could perform the essential functions of the position; and (4) that the employer refused to make such accommodations.

*Pantazes v. Jackson*, 366 F. Supp. 2d 57, 66 (D.D.C. 2005) (internal quotation marks citation omitted).  The plaintiff bears the burden of proving each element by a preponderance of the evidence, *see Flemmings v. Howard Univ.*, 198 F.3d 857, 861 (D.C. Cir. 1999); however, if the employer invokes the affirmative defense of undue hardship, the burden shifts to the employer to prove that the affirmative defense applies. *Id.*; *see also Barth v. Gelb*, 2 F.3d 1180, 1187 (D.C. Cir. 1993).

In the instant case, Von Drasek requested accommodations on October 5, 2010— literally on the eve of her proposed dismissal—and the FDA's first line of attack is that Von Drasek's request was untimely, which, in the FDA's view, means that the agency had no obligation to accommodate her.  (*See* Def.'s Mem. at 14.)  This line of argument requires this Court to consider whether Von Drasek's request for accommodations was properly made as a threshold issue, prior to the Court's analysis of the merits of the parties' contention that there is no genuine issue of material fact with respect to the failure-to-accommodate claim.  (Def.'s Mem. at 14-16.)  As explained below, this Court disagrees with the FDA's timeliness argument.

1.     Albeit Late In Coming, Von Drasek's Accommodation
Request Was Timely And The FDA Had A Duty To Consider
It

It is the law of this circuit that a request for accommodation of a disability is

timely if the institution is "in a position to respond" to the request.  *Singh v. George

Wash. Univ. Sch. of Med. & Health Scis.*, 508 F.3d 1097, 1105 (D.C. Cir. 2007); *see*

*also Steere v. George Wash. Univ.*, 368 F. Supp. 2d 52, 56 (D.D.C. 2005).  The D.C.

Circuit directly held as much in *Singh*, a case that involved a plaintiff medical student

who had received failing or unsatisfactory grades in several classes.  *See* 508 F.3d at

1099.  As a result of the student's poor academic performance, a committee of faculty

members recommended that the student be dismissed from the program, and shortly

thereafter, an independent psychologist diagnosed the plaintiff with learning disabilities

and recommended several accommodations.  *Id.*  The plaintiff promptly disclosed the

diagnosis to the faculty and sought accommodations for it, but instead of commencing

the accommodation process, the university dismissed the plaintiff from the program,

arguing the request was untimely because it came *after* the student had already been

tapped for removal.  *Id.* at 1105.  The D.C. Circuit rejected the university's argument,

explaining that the accommodation request was not too late because it had been made

before the plaintiff was actually expelled, and the plaintiff's lawsuit sought only to

challenge the university's "actions *after* she informed [it] of her diagnosis and

requested modifications, when the [university] was in a position to respond."  *Id.* at

1105; *see also Steere*, 368 F. Supp. 2d at 56 (rejecting the defendant's timeliness

argument because the final dismissal decision took place after the decision-maker had

been informed about the plaintiff's condition and accommodation request).

So it is here.[5]  Von Drasek did not disclose her disability or request accommodations for it until *months* after Dietzel had warned her about her poor job performance and the consequences of a failure to improve, and indeed, Von Drasek even waited until she had been specifically informed that she had not improved and that removal was being proposed.  Nevertheless, it is undisputed that Von Drasek revealed the bipolar diagnosis and sought various work-related accommodations *before* she was removed from her position.  And that circumstance puts her in precisely the same position temporally as the plaintiff in *Singh*, whose request was found to be timely even though it was made after a proposed removal.  *See Singh*, 508 F.3d at 1105 (finding timely an accommodation request made after the faculty committee had recommended dismissal, but prior to plaintiff's dismissal, "when the University was still in apposition to respond[,]" and declining to "address the case of the plaintiff who, once ousted on terms applicable to a non-disabled person, knocks on the door anew to seek reinstatement under the ADA").

None of the sources that the FDA cites to support its contrary argument establishes otherwise.  For starters, the only federal case that the FDA cites for this proposition is inapposite because the plaintiff employee never properly requested accommodation, either before or after her termination.  (*See* Def.'s Opp'n to Pl.'s Cross

---

[5]  It is of no moment that *Singh* and its progeny involve a different provision of the ADA (and thus the Rehabilitation Act) than is at issue with respect to Von Drasek's failure-to-accommodate claim.  The plaintiff in *Singh* was a student whose claim arose under Title III of the ADA, which applies to places of public accommodation.  *See* 42 U.S.C. § 12182(a).  By contrast, the instant case involves a claim under the Rehabilitation Act that incorporates standards found in Title II of the ADA, *see* 29 U.S.C. § 794(d), which applies to employers, 42 U.S.C. § 12112(a).  Nevertheless, neither Title II nor Title III of the ADA contains any unique timing requirements that would serve to distinguish these statutory sections, and the trend among the circuits is to "read . . . equivalent requirement[s]" into these different provisions.  *Singh*, 508 F.3d at 1106 (citing *Mershon v. St. Louis Univ.*, 442 F.3d 1069, 1076 (8th Cir. 2006) & *Bercovitch v. Baldwin Sch., Inc.*, 133 F.3d 141, 154-55 (1st Cir. 1998)).

Mot. and Reply in Supp. of Def.'s Mot. ("Def.'s Opp'n") at 5 (relying on *Hill v. Kansas City Area Transportation Authority*, 181 F.3d 891 (8th Cir. 1999), for the proposition that "the employer has no duty to accommodate" if the "employer has already initiated [removal] action based on poor performance[,]" when the Eighth Circuit ultimately held that "Hill did not request a disability accommodation, she asked for a second chance to better control her treatable medical condition. . . . [which] is not a cause of action under the ADA" (*Hill*, 181 F.3d at 895)); *see also Singh*, 508 F.3d at 1105 (distinguishing *Hill* on the basis that plaintiff there "had failed to request any real accommodation").  Nor do the administrative guidance documents or decisions that the FDA points to help to advance its timeliness argument.  To be sure, EEOC guidance explains that reasonable accommodation is "prospective," so employers are "not required to excuse past misconduct even if it is the result of the individual's disability."  EEOC, Enforcement Guidance:  Reasonable Accommodation & Undue Hardship Under the ADA ("EEOC Accommodation Guidance"), Question 36 (Oct. 17, 2012).[6]  But the guidance also notes that the employer "must make reasonable accommodation" to enable the employee to succeed going forward, *id.*, and on the specific issue of timeliness, the guidance emphasizes that there is no deadline by which an employee must request an accommodation, *id.* at Question 4.

Moreover, under regulations promulgated by the Office of Personnel Management, 5 C.F.R. § 432.101 *et seq.* (2014), an employee for whom removal has been proposed has the right to provide a written response, and as part of this response, the employee may provide medical records, which the employer must consider before

---

[6] *Available* at http://www.eeoc.gov/policy/docs/accommodation.html (last visited Aug. 14, 2015).

issuing a final decision on the proposed employment action, *see* 5 C.F.R.

§ 432.105(a)(4)(iv).  Indeed, an OPM regulation specifically instructs that "[t]he agency

*shall* allow an employee who wishes to raise a medical condition which may have

contributed to his or her unacceptable performance to furnish medical

documentation[,]" *id.* (emphasis added), and although the regulation expresses a

preference that employees submit such medical documentation *before* a proposed

removal, OPM makes clear that the agency must still consider the documentation if it is

not submitted until afterwards, and it also stresses that the agency "shall be aware" of

the reasonable accommodation duty if "the employee offers [medical] documentation

after the agency has proposed a reduction in grade or removal[.]" *Id.*; *see also*

Reduction in Grade & Removal Based on Unacceptable Performance, 54 Fed. Reg.

26,172, 26,178 (June 21, 1989) (same).

It is also clear that the EEOC administrative decisions that the FDA cites are

distinguishable from the instant case on their facts.  Generally speaking, these opinions

involve probationary employees,not permanent employees like Von Drasek[7]; or

employees who had already received a final notice of removal[8]; or employees who are

unable to demonstrate that the disability was actually the cause of the poor

performance.[9]  Thus, these decisions simply do not stand for the proposition that a

[7] *See, e.g.*, *Diaz v. Shinseki*, EEOC Appeal No. 0120093341, 2011 WL 2956836, at *3 (July 14, 2011); *Ruiz v. Archivist of the U.S. Nat'l Archives & Record Admin.*, EEOC Appeal No. 01A55070, 2006 WL 266491, at *1 (Jan. 24, 2006); *Hernandez v. Dep't of the Navy*, EEOC Appeal No. 01A41079, 2004 WL 764343, at *1 (Mar. 30, 2004).

[8] *See, e.g.*, *Hailey v. Donahoe*, EEOC Appeal No. 0120110260, 2011 WL 2956814, at *2 (July 12, 2011); *Bell, v. Dep't of Homeland Sec.*, No. 0120071655, 2009 EL 1586276, at *2 (May 28, 2009); *Smith v. Dep't of Labor*, EEOC Appeal No. 01A50480, 2006 WL 615735, at *5 (Feb. 28, 2006).

[9] *See, e.g.*, *Traylor v. Horinko*, EEOC Appeal No. 01A14117, 2003 WL 22763229, at *6-7 (Nov. 6, 2003).

request for accommodations made by a permanent employee before a final notice of removal has issued is untimely.

In sum, the relevant administrative guidance is in harmony with the D.C. Circuit's mandate that, if an employer is still in a position to respond to a request for accommodations (because the requester is still employed) such request is timely and the employer must consider it. *See Singh*, 508 F.3d at 1099.  Here, Von Drasek requested accommodations prior to being removed, and as it turned out, the FDA's human resources specialist also specifically noted that the agency did, in fact, have a duty to attempt to honor this tardy request.  (Pl.'s Ex. 11, ECF No. 10-13, at 1.)  This Court finds that the specialist was right:  Von Drasek's request was timely, and thus, the FDA's contention that it had no obligation to consider Von Drasek's request for accommodations under the circumstances presented here is unavailing.

2.    Neither Party Is Entitled To Summary Judgment On The Failure-to-Accommodate Claim

The parties' cross motions assert that there is no genuine issue of material fact regarding whether or not Von Drasek is entitled to relief on her failure-to-accommodate claims.  The FDA maintains that the uncontroverted facts fail to establish all of the elements of a prima facie case, and thus Defendants are entitled to judgment as a matter of law (Def.'s Mem. at 16-17), while Von Drasek asserts Defendant's improper refusal to accommodate her is equally plain on the record facts, and thus summary judgment should be awarded to Plaintiff (Pl.'s Mem. at 10–21).  Notably, three of the four elements of a failure-to-accommodate claim are indisputably established here:  Von Drasek is an individual with a disability within the meaning of the ADA, given her bipolar diagnosis (*see* Def.'s Mem. at 6 n.1; Pl.'s Mem. at 2); the FDA was aware of

Von Drasek's disability prior to its decision to terminate her employment (*see* Removal Decision at 43); and the FDA denied Von Drasek's requested accommodations (at least with respect to her request for reassignment to a different position) (Reas. Acc. Req. Denial at 2).

Consequently, whether or not summary judgment is appropriate—and for whom—turns on whether there us any genuine dispute regarding Von Drasek's ability to perform the essential functions of the position with the requested accommodations. (*See, e.g.*, Def.'s Opp'n at 1–2 ("Plaintiff does not state a prima facie case of disability discrimination because her requested accommodation would not have helped her perform the essential functions of her job as a chemist."); Pl.'s Reply to Def.'s Opp'n to Pl.'s Cross-Mot. for Summ. J. at 5 ("Defendant denied Plaintiff's request for reasonable accommodation because Plaintiff was not qualified to perform *her* job[; n]o determination was made regarding Plaintiff's ability to perform any other chemist position." (internal citations omitted)).)  This Court concludes, for the following reasons, that whether or not Von Drasek could have performed adequately if she had been accommodated as requested presents a genuine disputed issue of fact that is material to Von Drasek's failure-to-accommodate claim, and as a result, summary judgment for either party is precluded.

As explained previously, "[t]o prevail on a claim of disability discrimination under the Rehabilitation Act, plaintiffs must show that they could perform the essential functions of their jobs either with or without reasonable accommodation." *Solomon v. Vilsack*, 628 F.3d 555, 557 (D.C. Cir. 2010) (internal quotation marks and citation

omitted); *see also* 42 U.S.C. § 12111(8).[10]  There is no question that "reassignment to a

vacant position" can be a reasonable accommodation, 42 U.S.C. § 12111(9), and when

such reassignment is requested, courts have clarified that the focus is not on whether

the employee can perform the essential functions of her *current* job, but rather whether

the employee "can perform the essential functions of the employment position to which

she seeks reassignment[,]" *Aka*, 156 F.3d at 1301.  Von Drasek requested to be

reassigned to another chemist position within the FDA, after written instructions and

additional time for assignments were insufficient to buoy her sagging performance as an

FDA chemist.  (*See* Defs.' Mem. at 16-17.)  Thus, the FDA contends that Von Drasek's

inability to perform as a chemist in *any* division was self-evident.  (*Id.*)  But, the record

also shows that Von Drasek had successfully performed the essential functions of an

agency chemist previously, at the USDA, where she had worked for seven years and had

allegedly performed the required analyses in a "fully successful" (and in some cases,

"exceptional") manner, despite her bipolar disorder diagnosis.  (*See* Pl.'s Reply to Prop.

to Remove at 6, 13.)  In addition, according to Von Drasek's physician, her failure to

perform at the FDA was due in large part to the particular work environment in which

she had been placed—an environment that purportedly was "causing her an

extraordinary amount of anxiety."  (*See* Def.'s Ex. 4, ECF No. 7-1, at 30; Pl.'s Reply to

Prop. to Remove at 2, 3-4 (insisting that Von Drasek's poor performance was

attributable to her co-worker's hostile behavior—*i.e.*, yelling, cursing, sarcasm, and

---

[10] Notably, "[w]hether an individual is 'qualified' for a job may at times present a pure question of law to be resolved by the court, but it may also . . . be a question of fact that must be resolved by a fact-finder at trial."  *Swanks*, 179 F.3d at 934.

constant criticism—and that she would have performed adequately had she been placed in a different working group).)

The instant record thus compels the conclusion that a genuine dispute of fact exists regarding whether Von Drasek's job performance was irredeemably poor, on the one hand, or the product of a specific work environment, on the other. And this dispute is plainly material to the question of whether the requested reassignment would have been a reasonable accommodation for the purpose of the Rehabilitation Act. Accordingly, summary judgment for either party on the failure-to-accommodate claim would be inappropriate, and both parties' cross-motions for summary judgment must be denied. *See Alston v. Wash. Metro. Transit Auth.*, 571 F. Supp. 2d 77, 85-86 (D.D.C. 2008) (denying motion for summary judgment on failure-to-accommodate claim where there was "a material factual dispute as to whether plaintiff was qualified" for the reassignment positions she identified); *Hines v. Chrysler Corp.*, 231 F. Supp. 2d 1027, 1052 (D. Colo. 2002) (same); *D'Amato v. Long Island R.R. Co.*, 99cv1797, 2001 WL 563569, at *6 & n.7 (S.D.N.Y. 2001) (same).

### B.    The FDA Is Entitled To Summary Judgment On Von Drasek's Intentional Discrimination and Retaliation Claims

With respect to Von Drasek's intentional discrimination and retaliation claims, this Court has no trouble concluding that no genuine dispute of material fact exists because, on the instant record, no reasonable jury could find that discriminatory animus against Von Drasek's disability was the but-for cause of her termination, or that the FDA terminated her solely because she requested a reasonable accommodation. Instead, the record evidence clearly establishes that Von Drasek's supervisor had formed a deeply-held conviction about Von Drasek's inability to do her job—and had

made plans to terminate her—long before Von Drasek revealed her disability to the agency or requested accommodations.

        1.     <u>Discriminatory Animus Based On Disability Was Not The Sole Reason For Von Drasek's Termination</u>

The prima facie elements of an intentional discrimination claim brought under the Rehabilitation Act are: (1) that the employee had a disability within the meaning of the Act, (2) that the employee was "otherwise qualified" for the position with or without reasonable accommodation, and (3) that the employee suffered an adverse employment action solely because of her disability.  *See Dorchy v. Wash. Metro. Transit Auth.*, 45 F. Supp. 2d 5, 10 (D.D.C 1999).  When advancing an intentional discrimination claim, a plaintiff may either present direct evidence of discrimination based on her disability, or she may provide indirect—or circumstantial—evidence of discrimination.  *Pantazes*, 366 F. Supp. 2d at 66; *see also Trans World Airlines v. Thurston*, 469 U.S. 111, 121 (1985) (explaining that the shifting burdens of production established in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), were intended to assist a plaintiff who has only circumstantial evidence of bias).

Von Drasek alleges that her removal from the FDA chemist position constituted intentional discrimination on the basis of her disability, (*see* Compl. ¶¶ 58-60), and she argues that she has direct evidence of intentional discrimination in the form of emails between various HHS employees (*see* Pl.'s Mem. at 36-39)—in particular, Von Drasek points to the exchange between Dietzel and another employee in which the employee expresses doubt that "the Agency will be able to accommodate" Von Drasek because, "[e]ven if given more time to complete assignments, [Von Drasek] still *needs to be able to think*[,]" and Dietzel responds that thinking is "the area in which [Von Drasek] is

truly lacking[.]" (Pl.'s Ex. 19, ECF No. 10-21, at 1 (emphasis added).)  As Von Drasek
sees it, whether she has the "ability to think" is inherently tied to her bipolar disorder
and, therefore, this comment pertains to her disability.  *Cf. Armstrong v. Jackson*, 730
F. Supp. 2d 118, 124 (D.D.C. July 17, 2006).  This Court disagrees with Von Drasek's
characterization of this record evidence, and for the reasons explained below, it
concludes that no reasonable jury could find that the quoted remarks constitute direct
evidence of discrimination for the purpose of the causation element of Von Drasek's
intentional discrimination claim.

"'Direct evidence of discrimination is evidence that, if believed by the fact
finder, proves the particular fact in question *without any need for inference*[,]'"
including "'any statement or written document showing a discriminatory motive *on its
face*.'" *Bowden v. Clough*, 658 F. Supp. 2d 61, 87 n.19 (D.D.C. 2009) (quoting
*Lemmons v. Georgetown Univ. Hosp.*, 431 F. Supp. 2d 76, 86 (D.D.C. 2006)).  The
email statement quoted above is not *facially* discriminatory—at most, it indicates the
speakers' personal animosity for Von Drasek in light of her prior poor performance—
and, absent any reference to Von Drasek's disability or any suggestion that the speakers
were discussing Von Drasek's capabilities as a disabled person, the statement does not
suffice to demonstrate that Von Drasek was removed from her position "solely by
reason of" her bipolar disorder within the meaning of the Rehabilitation Act.  *See Rand
v. Geithner*, 730 F. Supp. 2d 118, 124 (D.D.C. 2010) (noting that the supervisor's e-
mail expressing enthusiasm about the plaintiff's removal at most "shows that [the
supervisor] had a personal dislike for [the plaintiff]; it does not show . . . animus"
(citation omitted)); *see also Armstrong*, 730 F. Supp. 2d at 124 (noting that negative

comments about the plaintiff's attitude in general were unrelated to her disability and therefore only reflected dislike rather than discriminatory animus).  Statements made in other emails in which FDA employees discuss Von Drasek's fate likewise lack the necessary discriminatory animus.[11]

Moreover, although the record clearly establishes that Dietzel personally disliked Von Drasek and wanted to have her removed, it also confirms that Dietzel had resolutely set out on the path toward securing Von Drasek's termination long before Von Drasek had revealed her disability to the FDA.  To recap, Dietzel first put Von Drasek on notice that her performance was lacking at the time that Dietzel placed Von Drasek on the PIP in April of 2010—*before* anyone at the FDA was aware of Von Drasek's disability.  (Def.'s Ex. 1 at 2.)  Six months later, when Von Drasek's performance still had not improved, Dietzel gave her an official notice of proposed removal (again, *before* Dietzel was even aware that Von Drasek had bipolar disorder). (Prop. to Remove.)  And in the end, the reasons that the FDA ultimately provided for terminating Von Drasek were exactly the same reasons that the agency gave when it placed Von Drasek on the PIP and when it issued the notice of proposed removal. (*Compare* Removal Decision at 43, *with* PIP at 2-4, *and* Prop. to Remove at 8-11.)

---

[11]  For example, Ann Adams (Dietzel's supervisor) wrote to Dietzel that the FDA was "in a catch 22" because "if we proceed with the removal, [Von Drasek] will take it to MSPB, based on inadequate training and hostile work environment[,]" but "if we did take her back and assign her to a different supervisory group, we would once again be putting her on a PIP in the coming years (and then we'll get hit with retaliation)."  (Pl.'s Ex. 18, ECF No. 10-20, at 1.)  When this was brought to her attention, one human resources officer reminded the decision-makers to consider the possibility of reassignment, and noted that, if removal was the chosen course, they needed to articulate "job related non-discriminatory answers . . . that do not appear to be a pretext."  (*Id.*)  These references to "discrimination" and "pretext" establish only that, at this point in time, the FDA was aware of Von Drasek's disability, and that the human resources officer was faithfully performing her duties.

Thus, it is indisputable that the agency was already well underway with the termination process before it was made aware of Von Drasek's disability, and there is no direct (or even circumstantial) evidence that but for discriminatory animus Von Drasek would not have been removed. Therefore, in this Court's view, no reasonable jury could find for the Plaintiff on the claim of intentional disability discrimination in violation of the Rehabilitation Act.

> 2. There Is No Evidence That Von Drasek Was Removed Solely In Retaliation For Her Accommodation Request

The Court reaches the same conclusion with respect to Von Drasek's retaliation claim. (*See* Compl. ¶¶ 61–63 (alleging that the FDA fired her in retaliation for her request for reasonable accommodation).) To establish a prima facie case of retaliation, a plaintiff must show: "(1) that [s]he engaged in protected activity; (2) that [s]he was subjected to adverse action by [her] employer; and (3) that there was a causal link between the adverse action and the protected activity." *Alexander v. Tomlinson*, 507 F. Supp. 2d 2, 17 (D.D.C. 2007) (citing *Smith*, 430 F.3d at 455). Retaliation claims brought under the Rehabilitation Act are subject to the same standards as Rehabilitation Act discrimination claims—*i.e.*, to prove the "causal connection" in a retaliation case brought under the Rehabilitation Act the plaintiff must show "that the adverse action would not have occurred but for the protected activity." *Marshall*, 634 F. Supp. 2d at 73.

Here, in response to Von Drasek's contention that she was terminated in retaliation for seeking a reasonable accommodation, the FDA reiterates that Von Drasek was removed because she was unable to perform the essential duties of her job, even with extra time and written instructions. And given the undisputed facts regarding the

circumstances leading up to Von Drasek's removal, it is clear that there is no evidence that Von Drasek was terminated *because* she requested an accommodation, rather than as a result of her past job performance and the FDA's belief that she would not be able to satisfy the job requirements in the future.  *See, e.g.*, *Lamberson v. Pennsylvania*, 561 F. App'x 201, 207 (3d Cir. 2014) (affirming grant of summary judgment to defendants on a nurse's Rehabilitation Act claim arising from suspension of her nursing license where the allegedly discriminatory policy "was not a 'but for' factor in the decision to suspend [plaintiff's] license or why it was not reinstated"); *Gard*, 752 F. Supp. 2d at 39 (granting defense motion for summary judgment where plaintiff "offer[ed] no specific facts to support his burden of persuasion that his engagement in protected activity was the 'but-for' reason that Defendants refused an official accommodation").  Put another way, even if the FDA was wrong about Von Drasek's capabilities, there is no dispute that it was planning to terminate Von Drasek (and, in fact, her supervisor had already initiated the removal process) before Von Drasek revealed her disability or requested accommodations.  Consequently, this Court concludes that no reasonable jury could find the necessary causal link between Von Drasek's request for accommodation and the adverse employment action at issue here.

## IV.      CONCLUSION

Von Drasek certainly waited until the very last moment to reveal her disability and request accommodations, but her request was timely insofar as she had not yet been removed when the request was made, and thus, the FDA had a duty to consider it.  Be that as it may, whether or not Von Drasek could perform the essential functions of the chemist position with the requested accommodations is a genuine issue of fact that is material to Von Drasek's failure-to-accommodate claim and thus prevents entry of

summary judgment for either party on that claim.  But, the Court will enter summary judgment in the FDA's favor on Von Drasek's intentional discrimination and retaliation claims, because the record evidence fails to satisfy the Rehabilitation Act's stringent but-for causation requirement.

Accordingly, it is hereby **ORDERED** that Defendant's [7] Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**, and Plaintiff's [10] Cross-Motion for Summary Judgment is **DENIED**.

DATE:  August 17, 2015                                *Ketanji Brown Jackson*
                                                      KETANJI BROWN JACKSON
                                                      United States District Judge